**Bjorn HOLMSTROM, a individual Plaintiff,**

v.

**PPG INDUSTRIES, INC., a Pennsylvania Corporation and the PPG Industries, Inc., Non-Contributory Retirement Plan For Salaried Employees, Clyde McLane, Jr., Agent & Plan Administrator, Defendants.**

**Civ. A. No. 80–1121.**

United States District Court, W. D. Pennsylvania.

Feb. 2, 1981.

Ralph H. German, Robert D. German, Cooper, German, Kelly & Smith, Pittsburgh, Pa., for plaintiff.

Ray C. Stoner, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendants.

## OPINION

DUMBAULD, District Judge.

Plaintiff, an alien, seeks a declaratory judgment under 28 U.S.C. 2201[1] with respect to his benefits under a former employer's retirement plan. Defendants' motion to dismiss has been briefed and argued.

---

1. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

■ An alien is entitled to invoke diversity jurisdiction.[2] 28 U.S.C. 1332(a)(2) grants original jurisdiction to district courts of all civil actions (involving over $10,000) between "citizens of a State, and foreign states or citizens or subjects thereof." This grant is within the judicial power of the United States, which extends to controversies "between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." Const. Art. III, sec. 2, cl. 1. In *Hepburn v. Ellzey*, 2 Cranch 445, 453, 2 L.Ed. 332 (1805), Chief Justice John Marshall stated that "the courts of the United States are open to aliens."

Plaintiff is a national of Sweden, residing in Monaco. For some 30 years he worked for international subsidiaries of defendant PPG Industries, Inc. [Pittsburgh Plate Glass] which maintains a pension plan [Ex. A. to Complaint] revised to conform with ERISA (Employee Retirement Income Security Act, 29 U.S.C. 1001 *et seq.*). Plaintiff elected early retirement in December, 1978, following a dispute with the company about payment of his salary.

In 1961, while plaintiff was stationed at Geneva, Switzerland, it was agreed by the company that his base salary and foreign service allowance, less certain deductions, be paid in Swiss francs at a rate of 4.3 francs to the dollar. [Ex. A and B to plaintiff's affidavit of October 17, 1980]. Apparently this arrangement was complied with until September, 1975, although a memorandum of October 9, 1973 [Ex. H to said affidavit] reflects discussion between company officials on the subject in which plaintiff apparently did not participate, which embodied a rate of $0.2319 to the franc.

Count One of the Complaint (filed August 11, 1980) seeks adjudication of plaintiff's right to continued payment of his salary at the value in francs rather than dollars. Defendants contend that this Court is barred by the four-year statute of limitations prescribed in 42 Pa.C.S.A. 5525

for actions "upon an express contract not founded upon an instrument in writing." However, if there is a contract between plaintiff and the company entitling him to payment of his salary in Swiss francs, it arises from the understanding embodied in the exchange of letters above referred to [Ex. A. and B. to plaintiff's affidavit] which can be regarded as an "instrument in writing." This general term includes any documentation of the agreement, and does not require a formal contract prepared by counsel. Hence § 5527 prescribing a six-year limitation for actions upon a "contract, obligation or liability" founded upon an "instrument in writing" would be applicable, and the motion must be dismissed as to Count One.

Count Two endeavors to use the higher value of the salary paid in Swiss francs to compute plaintiff's pension benefits under the plan. An element in such computation is "Final Average Monthly Salary," which is governed by the average "Monthly Salary." The monthly salary is defined (Plan I–4) as "monthly base salary," including "foreign service allowances" effective in 1976 but excluding various "special payments, fees or allowances."

■ It seems clear from the agreement referred to in Count One regarding the payment in Swiss francs that this arrangement did not apply to pension benefits. It related only to payment of salary. It does not affect the computation of pension benefits governed by "base salary." Count Two must be dismissed.

It should be mentioned that defendants seek dismissal of Counts Two through Four on the ground that the court lacks jurisdiction because of plaintiff's failure to exhaust administrative remedies under the plan, in accordance with the general doctrine of "primary jurisdiction."

That doctrine first arose in *Texas and Pacific R. R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 440–41, 27 S.Ct. 350, 355, 51

---

**2.** As participant in a retirement plan under ERISA, plaintiff also invokes jurisdiction under 29 U.S.C. 1132 which provides that "A civil action may be brought" by a participant "to clarify his rights to future benefits under the terms of the plan."

L.Ed. 553 (1907) in connection with rate determinations of the Interstate Commerce Commission. In the usual case of primary jurisdiction, technical questions involving special areas such as transportation are involved, and the administrative agency is composed of experts in the field supposedly constituting a "tribunal appointed by law and informed by experience" [3] which is peculiarly capable of dealing with the problems arising.

■ In the case of ERISA, however, there is no tribunal appointed by law to exercise expertise and manned by hearing examiners now yclept "administrative law judges," but the purpose of the requirement in 29 U.S.C. 1133 requiring a claims procedure is simply to afford a participant in the plan a fair opportunity for careful consideration and review of his claim. The PPG "administrator" is not an independent trustee or financial institution, but merely a designated employee of PPG. We therefore do not swallow completely defendants' contention of primary jurisdiction, but believe that where there is a genuine controversy between adverse parties, involving simply questions of law and the interpretation of written documents, the courts are not ousted of their customary jurisdiction. *Great Northern Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 290–94, 42 S.Ct. 477, 478–480, 66 L.Ed. 943 (1922); *U. S. v. Western Pacific R. R. Co.*, 352 U.S. 59, 64–66, 77 S.Ct. 161, 165–166, 1 L.Ed.2d 126 (1956).

■ While it is beyond the judicial power of the United States to issue advisory opinions, it is now settled that a declaratory judgment is a constitutionally permissible remedy in a case where a genuine actual controversy exists. Dumbauld, *The Constitution of the United States* (1964) 332–33. And in the case at bar the record reveals the existence of an actual controversy with adversary parties, differing with respect to questions of law suitable for adjudication by the Court.

We turn therefore to Count Three, where plaintiff contends the figure of zero must be used for plaintiff's "Social Security Covered Compensation" in calculating his benefits. That term is defined (Plan, I–6) as "the monthly earnings with respect to which old age and survivors insurance benefits would be provided for a Participant under the Social Security Act if for each year until he reaches 65 his earnings are at least equal to the Social Security taxable wage base for such year."

The formula multiplies by the years of service the sum of .85% of the Participant's final average monthly salary "not in excess of *his* Social Security Covered Compensation" [italics supplied] plus 1.6% of such salary "in excess of Social Security Covered Compensation." (Plan, V–1).

Plaintiff claims that *his* social security "covered" compensation is zero, because as an alien he has no coverage and no social security benefits. At first blush this is a probable contention, but upon examination of the plan's definition of social security covered compensation it will be seen that that term is simply an arbitrary mode of referring to a lower range of salary as distinguished from a higher range of salary. It does not imply that the participant for whom these figures are developed actually is entitled to receive any social security benefit whatever. The plan might just as well have distinguished between a salary bracket subject to an income tax rate of less than 25% and that subject to a rate in excess of 25%.

*A priori* it is difficult to perceive why this lesser percentage of the lower salary and greater percentage of the higher salary was adopted by the framers of the plan.

Perhaps its origin is purely a survival from historical circumstances. Those whose memories go back to the great depression can remember that Social Security was a "New Deal" measure designed to provide subsistence benefits for all the superannuated working population. Previously, there had been some corporate pension plans designed to secure the loyalty of employees, by depriving them of any vested rights, and

**3.** *Ill. Central R. R. v. I. C. C.*, 206 U.S. 441, 454, 27 S.Ct. 700, 704, 51 L.Ed. 1128 (1907).

enabling the employer to discharge them just before reaching pensionable age, or to discharge them for union activity, thus forfeiting any rights to a pension. After enactment of the Social Security legislation, many corporations then adjusted their own corporate plans so as to deduct social security benefits from the corporate pension benefits. The corporate benefits were thus limited to benefits *in excess of* social security benefits. One may speculate that the PPG plan is a liberalization of such plans by taking into account and giving some credit for (though at a lower percentage rate) the lower salary bracket which would normally produce social security benefits.

But the figure to be used in computing pension benefits is simply an arbitrary amount adopted by the framers of the plan, and in no wise changes because in fact a particular participant is not entitled to receive any social security benefits whatever. Count Three must be dismiss'd.

In Count Four plaintiff contends that his benefits are to be calculated from the first day of the month following his 62nd birthday. (Plan, V–2)

This contention is correct, and supported by the language of the plan. It is true that no actual *payment* can be made until after plaintiff's application is filed and processed (Plan VI–1), but the benefits become due, owing, and payable from the "Benefit Commencement Date" (Plan, VI–1), which is defined as "the date on which a Participant's benefit commences under the Plan as determined in accordance with ARTICLE VI." (Plan, I–2). The motion to dismiss as to Count Four is denied.

■ Counts Five and Six advance the contention that under Article X of the treaty of March 23, 1939, between Sweden and the United States, plaintiff's pension benefits are exempt from taxation in the United States, and hence from withholding under 26 U.S.C.A. 3402.

This contention is also correct.

The second paragraph of Article X provides that:

"Private pensions and life annuities derived from within one of the contracting States and paid to individuals residing in the other contracting State shall be exempt from taxation in the former State."

Paragraph 3 of the Protocol annexed to the treaty provides that: "A citizen of one of the contracting States not residing in either shall be deemed, for the purpose of this convention, to be a resident of the contracting State of which he is a citizen."

The procedure for applying these provisions has been clarified by the Internal Revenue in I.T. 3427 and Rev.Rul. 72–12. As indicated in Rev.Rul. 76–224, the party claiming exemptions files form 1001 with the party who would otherwise withhold tax under § 3402.

■ Unless the withholder has reason to know that the party filing form 1001 is no longer eligible for exemption, the withholding party "is not responsible for misstatements made on Form 1001 by an owner of income," and hence would not be liable for tax which should have been withheld.

Defendants manifest curiosity as to whether plaintiff would pay tax in Sweden on the benefits received under the plan. But that is none of their concern. Plaintiff's liability for Swedish tax, as a resident of Monaco, is a matter between him and the Swedish tax authorities. Whether Sweden chooses to tax all income of Swedish nationals regardless of residence, or treats nonresidents differently from residents, is a matter to be regulated by Swedish legislation, without regard to the views of PPG's plan administrator. If plaintiff, acting in accordance with Learned Hand's familiar maxim [4] manages his affairs so as to take advantage of arrangements permitted by Swedish law which reduce his tax burden, PPG can not complain. Its ox is not gored.

---

4. "Over and over again courts have said that there is nothing sinister in so arranging one's affairs to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions not voluntary contributions. To demand more in the name of morals is mere cant." *Commissioner v. Newman, 159 F.2d 848, 850–51* (C.C.A. 2, 1947).

Plaintiff clearly qualifies for exemption under the treaty. However, it would seem premature for plaintiff to claim relief now against PPG to require his employer's acceptance of his Form 1001 [or certificate under 26 U.S.C. 3402(n)]. The appropriate time to tender such documentation would seem to be in connection with the processing on an application, in anticipation of actual payments being made.

Hence, it is not necessary to pass at the present time upon defendant's contention that no declaratory relief can be granted upon the ground that the instant controversy under Counts Five and Six is one "with respect to federal taxes." [5]

In general it may be noted that the limitations upon declaratory judgment relief and injunctive relief are approximately equivalent. *Dietrich v. Alexander*, 427 F.Supp. 135, 137–38 (E.D.Pa.1977); *Samuels v. Mackell*, 401 U.S. 66, 70–73, 91 S.Ct. 764, 766–768, 27 L.Ed.2d 688 (1971). And in *U. S. v. American Friends Svce. Committee*, 419 U.S. 7, 10, 95 S.Ct. 13, 15, 42 L.Ed.2d 7 (1974), it is said that "injunction against the collection of the tax by withholding enjoins the collection of the tax and is therefore contrary to the express language of the Anti-Injunction act." [6]

However, it must be remembered that this language was used in a case where tax was admittedly due, and the Quaker pacifists merely sought to publicize their protest against a defense budget amounting to 51.6% of all public expenditures and to compel the government to resort to more dramatic and drastic methods of collection.[7] 419 U.S. at 7–8, 95 S.Ct. at 13–14. The government was a party to that case, and hence party to a controversy with the taxpayers.

 In view of what has been said above regarding the treaty with Sweden and the procedures for use of form 1001, there is substantial merit in the contention advanced in plaintiff's brief that

it is the performance of the non-discretionary, routine duties of the Administrator of the defendant Plan required by applicable treasury regulations, and not the determination of the tax liability of any party, which is the central controversy of the instant case. For this reason, the present case does not fall within the federal taxes exception to the Federal Declaratory Judgment Act and the relief requested by the plaintiff in his complaint under the act is available to him.

\* \* \* \* \* \*

The plaintiff in the present case does not ask for a declaration that the subject withholding taxes may not be withheld, in the sense that the Internal Revenue Service is bound by this determination; but, rather, that the administrator of defendant Plan must accept and process plaintiff's completed Form 1001. Thus the most the plaintiff can receive from this Court is a determination that Form 1001 must be accepted by the administrator of the defendant Plan.... If the Internal Revenue Service wishes at some point to review the plaintiff's claimed exemption, no adverse judicial determination can impede it from doing so, and this can be accomplished without risk of liabil-

---

**5.** As to potential injunctive relief under 28 U.S.C. 2202 there must be borne in mind the prohibition in 26 U.S.C. 7421(a) that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

**6.** *A priori* there would appear to be merit in the argument mentioned by Justice Douglas in dissent (419 U.S. at 7) that withholding is not a method of assessing or collecting taxes, but the creation of a fund to be used as security for payment of taxes subsequently ascertained to be due, with the resultant deprivation of the taxpayer's right to use of the impounded fund from the date of withholding to the April 15th due date. The arrangement is similar to the escrow funds collected by mortgagees to ensure payment of future taxes on the mortgaged premises. *Buchanan v. Brentwood F. S. & L. Assoc.*, 457 Pa.. 135, 139–42, 320 A.2d 117 (1974).

**7.** If it were clear that the Government could not win, the rule of *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962) would apply.

ity to the withholding agent for a failure to withhold taxes.

\* \* \* \* \* \*

No actual controversy exists between the U. S. government and the plaintiff. Although federal taxes are incidentally involved, plaintiff has not challenged the propriety or the validity of the applicable withholding tax statutes nor has the plaintiff sought to impede the assessment or collection of federal taxes by the government. The instant proceeding is not aimed at the adjudication of any rights as between the plaintiff and the government and, if any rights do exist, they will be unaffected by the judgment rendered in this case. The controversy, as alleged in counts five and six of the complaint is whether or not the defendants should be required to perform a routine function as a withholding agent, and the judgment rendered in this case will settle that question and no other. The defendants' objection to counts five and six of the complaint are unfounded and should be overruled.

Hence the motion to dismiss Counts Five and Six will be denied, without prejudice to future adjudication of the questions involved thereunder if they become pertinent and timely.

### ORDER

For the reasons set forth in the foregoing opinion, it is ordered: That defendants' motion to dismiss be and it hereby is granted with respect to Counts Two and Three of the Complaint, and denied with respect to Counts One, Four, Five and Six.