Shirley PHIPPS, Plaintiff,

v.

The METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.

No. C–3–84–962.

United States District Court, S.D. Ohio, W.D.

Aug. 9, 1985.

James D. Ruppert, John D. Smith, Franklin, Ohio, for plaintiff.

Gary L. Greenberg, Cincinnati, Ohio, for defendants.

Alvin Pasternak, New York City, for defendant Metropolitan Life Ins. Co.

Richard J. Paulter, St. Louis, Mo., for defendant Monsanto Research.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DISMISS; TERMINATION ENTRY

RICE, District Judge.

This matter comes before the Court for resolution of Defendants' Motion to Dismiss or, in the Alternative, Motion to Strike Certain of Plaintiff's Claims in the Amended Complaint. (Doc. #11).

I. *Facts*

Plaintiff was first employed by Defendant Monsanto Research Corporation (Monsanto) as a security guard in 1974. She was injured in a car accident in 1979. Plaintiff filed a claim for disability benefits

with Defendant Metropolitan Life Insurance Company (Metropolitan), the administrator of Monsanto's insurance plan for its employees, on December 22, 1980. Metropolitan denied her application on April 11, 1980. Plaintiff was terminated by Monsanto on December 23, 1981.

On January 27, 1983, Plaintiff inquired of Monsanto, through counsel, about the possibility of obtaining disability benefits from Monsanto's insurance plan. Plaintiff filed another application for disability benefits on March 16, 1983. Metropolitan requested additional information from Plaintiff as to her medical condition, and arranged an independent medical examination for Plaintiff with Dr. J.B. Paley. Dr. Paley informed Metropolitan on September 15, 1983 of the results of his examination of Plaintiff. Metropolitan told Plaintiff on November 16, 1983 that she did not qualify as totally and permanently disabled and thus was not entitled to benefits. Metropolitan's letter also included an explanation of the internal appeals procedure to which Plaintiff was entitled. Plaintiff appealed her denial of benefits on December 1, 1983.

The appeals procedure in the relevant plan administered by Metropolitan provides as follows:

> In the event of a dispute as to whether the Employe is totally and permanently disabled and therefore entitled to receive payment in accordance with the foregoing provisions, the Insurance Company, the Employer and the Employe, shall jointly select a licensed medical practitioner or practitioners to examine the Employe and the decision of such medical practitioner or practitioners so jointly selected shall be binding on the Insurance Company, the Employer, and the Employe. One half the fee for such medical review shall be borne by the Employe.

(Rev. Plan A–13435–G, Sec. VI, Part II(A)).

On March 1, 1984, Metropolitan proposed the names of three physicians it believed acceptable to provide the examination and binding decision as to Plaintiff's disability. Plaintiff responded on April 17, 1984 that none of these three were acceptable, and proposed Dr. Hasam Mehbod as the physician to be jointly selected. Plaintiff also requested a copy of Dr. Paley's report. On April 27, 1984, Defendant rejected Dr. Mehbod, pointing out that Plaintiff's medical difficulties were orthopedic in nature and that Dr. Mehbod had no expertise in that area. Defendant also agreed to send Dr. Paley's report to Plaintiff upon receipt of written authorization from both Plaintiff and Dr. Paley.

Plaintiff agreed that her problems were orthopedic in nature but, in her letter of May 3, 1984, asserted that an evaluation of the "total functioning ability of the body" was required. Plaintiff then renewed her request for the selection of Dr. Mehbod. On May 8, 1984, Metropolitan wrote to Dr. Paley and requested his written authorization to release his report to Plaintiff. On May 23, 1984, Metropolitan informed Plaintiff that Dr. Mehbod, a nephrologist, was not acceptable to perform her medical examination. It suggested that, in line with her desire for a review of the total body, an internist be jointly selected. It then proposed the names of three internists, and suggested that Plaintiff select one.

Plaintiff sent Metropolitan her written authorization for release of Dr. Paley's report on May 24, 1983. Metropolitan responded on June 7, stating that it had not yet secured Dr. Paley's written authorization and that release of the report would be forthcoming upon such authorization. On June 21, 1984, Plaintiff informed Metropolitan that Dr. Paley's report was essential to the proper selection of an examining physician. On July 24, 1984 Plaintiff declared the appeals procedure at a standstill. Labelling the provisions for the internal appeal as "vague," Plaintiff advised Metropolitan that she would file a lawsuit within thirty days unless all issues were resolved.

Metropolitan wrote Dr. Paley on October 22, 1984, to request written authorization to release his report to Plaintiff. Plaintiff filed her Complaint in this action on October 26, 1984. Dr. Paley responded to Metropolitan's letter on October 29, 1984, requesting a written release from Plaintiff.

II. *Exhaustion of Administrative Remedies*

■ In Counts I and II of her Amended Complaint, Plaintiff seeks relief for Metropolitan's arbitrary and capricious denial of benefits and its failure to provide her with a full and fair review of said denial. 29 U.S.C. §§ 1132(a)(1)(B), 1133(2). Defendants seek dismissal due to Plaintiff's failure to exhaust her administrative remedies prior to instituting suit in this Court. *Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1243–46 (7th Cir.1983); *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980). Plaintiff does not dispute the applicability of the exhaustion doctrine to matters governed by the Employment Retirement Income Security Act of 1974 (ERISA), or that she has failed to exhaust her internal remedies. Rather, she contends that exhaustion would be futile or inadequate in this case. This Court cannot agree.

Since the filing of the memoranda in this case, the Supreme Court has issued an opinion in *Massachusetts Mut. Life Ins. Co. v. Russell*, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), which has considerable bearing upon this case. *Russell* involved a claim for extra-contractual and punitive damages under 29 U.S.C. § 1109 due to the 132-day delay of a plan fiduciary in processing a request to review a termination of disability benefits. In analyzing the case, the Supreme Court noted that 29 U.S.C. § 1133, in its discussion of review of claims which have been denied, merely specifies that every plan shall comply with certain regulations promulgated by the Secretary of Commerce.[1] The Court then went on to observe:

> The Secretary's regulations contemplate that claims "shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances ... require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review." 29 CFR § 2560.-503–1(h)(1)(i) (1984). Nothing in the regulations or in the statute, however, expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits. Rather, the regulations merely state that a claim may be treated as having been denied after the 60, or 120, day period has elapsed. See § 2560.503–1(h)(4) ("If the decision on review is not furnished within such time, the claim shall be *deemed* denied on review" (emphasis added)). This provision therefore enables a claimant to bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits.

—— U.S. at ——, 105 S.Ct. at 3092.

With this observation of the Supreme Court in mind, the Court turns to the content of the Secretary's regulations under Section 1133. The key regulation for purposes of this case is 29 C.F.R. § 2560.503–1(h)(1)(i), which provides:

> A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.

As noted by the Court in *Russell*, a claim is deemed denied on review if the decision on

---

1. 29 U.S.C. § 1133 provides as follows:

 In accordance with regulations of the Secretary, every employee benefit plan shall—
 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
 (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

review is not furnished within 60 or 120 days. 29 C.F.R. § 2560.503–1(h)(4). An "appropriate named fiduciary" is defined in 29 C.F.R. § 2560.503–1(g)(2) as "the plan administrator or any other person designated by the plan, provided that such plan administrator or other person is either named in the plan instrument or is identified pursuant to a procedure set forth in the plan as the person who reviews and makes decisions on claim denials."

The regulations of the Secretary contemplate, in their definition of an "appropriate named fiduciary," that a plan may seek to invoke the expertise of persons other than the plan administrator in the review and decision on appeals from claim denials. In the Monsanto plan administered by Metropolitan, that fiduciary is the physician jointly selected by the parties. Were this a case where the jointly selected physician had failed to issue a decision within 60 days or 120 days, then the Court would believe *Russell* to strongly suggest that exhaustion of administrative remedies would no longer be appropriate. This is not such a case. Rather, this is a case where the request for review became bogged down in the selection of the "appropriate named fiduciary."

Plainly the selection of an "appropriate named fiduciary," other than the plan administrator, requires at least some modicum of additional time to elapse in the review process. It is also plain in *Russell* that the majority of the Court was in favor of prompt processing of requests for review. However, under plans requiring cooperation between the parties in the selection of a medical arbitrator, a hard and fast rule waiving the exhaustion doctrine after 60 or 120 days would simply guarantee that claimants who wished to do so could avoid internal reviewing by deliberately refusing to cooperate. The Court does not see in the *Russell* opinion a desire of the Supreme Court to undermine internal arbitration procedures or a dissatisfaction with the Secretary's apparent legitimization of such decision-making. Nor does the Court see in *Russell* any policies contradicting the long-held policy of judicial deference in

the ERISA area to the expertise of plan administrators and their fact-finding procedures. *See Amato*, 618 F.2d at 567–68. Thus the Court turns to consideration of the appropriateness of the exhaustion doctrine in this case.

Plaintiff insists that only this Court can ensure that she will receive the information to which she is entitled in the review of the denial of her claim. Other than Dr. Paley's report, the Court is unaware of any information requested by Plaintiff which was not made available by Defendant. The Court would agree with Plaintiff that her review of said report is required under the "full and fair" claims procedure envisioned by 29 U.S.C. § 1133(2). *Grossmuller v. International Union*, 715 F.2d 853, 857–58 (8th Cir.1983). The facts reveal that Metropolitan, while it did make attempts to secure Dr. Paley's authorization to release the report to Plaintiff, likely should have proceeded with greater alacrity or persistence. Defendants have informed the Court that a copy of Dr. Paley's report is now in Plaintiff's possession, having been provided to her in approximately December, 1984 after Dr. Paley authorized its release. (Doc. # 14 at 4).

Plaintiff's interest in the contents of Dr. Paley's report was certainly understandable. Scrutiny of the correspondence between Plaintiff's counsel and Metropolitan, however, reveals the issue of the report's release to have been basically independent of and rather subsidiary to the inability of the parties to jointly agree on a doctor to perform another evaluation of Plaintiff. This appears to have been the central conflict of the parties during the pendency of Plaintiff's internal appeal. In this Court's opinion, the standstill declared by Plaintiff was due largely to Plaintiff's insistence upon Dr. Mehbod despite Defendants' proffer of six physicians with specialities more suitable to the case. Plaintiff's counsel did not appear to link his position with respect to Dr. Mehbod and the need to obtain Dr. Paley's report until after several exchanges of letters and offers by Defendant had taken place.

In short, Plaintiff has not made a sufficient showing that resort to the internal appeals procedure would be futile or inadequate, despite the inability to immediately procure Dr. Paley's report on request. *Amato*, 618 F.2d at 568–69; *see Lieske v. Morlock*, 570 F.Supp. 1426, 1430 (N.D.Ill. 1983) (delineating circumstances under which futility found). Nor does the Court believe Plaintiff to have shown a wrongful denial of access to Defendants' internal procedures. *Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071, 1075 (E.D.Pa.1979). The Court believes that Plaintiff's own reluctance to compromise, under the particular facts and circumstances of this case, ought not to permit her to prematurely seek this Court's involvement in the merits of her entitlement to benefits.

*Holmstrom v. PPG Industries, Inc.*, 512 F.Supp. 552 (W.D.Pa.1981), relied upon by the Plaintiff, is distinguishable from the instant case. In *Holmstrom*, plaintiff and his former employer, the defendant, had agreed that plaintiff was to be paid in Swiss francs while stationed in Switzerland. *Id.* at 554–55. Plaintiff later claimed that this agreement was also applicable to the pension benefits to be paid to him under an ERISA-covered plan maintained by Defendant. The dispute thus turned on the relationship of various written contracts entered into by the parties. The *Holmstrom* court accordingly rejected the applicability of the exhaustion doctrine on the grounds that the case involved only questions of law and the interpretation of written documents, matters well within the expertise of courts rather than plan administrators. The focus in this case, on the other hand, is upon the correctness of the *initial* denial of benefits to Plaintiff based upon her medical condition. Such a matter is best committed at this stage of review to the plan fiduciary rather than to this Court.

For these reasons, the Court agrees with Defendants that Counts I and II of Plaintiff's Amended Complaint are not ripe for review and should be dismissed, without prejudice, in order that Plaintiff exhaust her administrative remedies.

### III. *Metropolitan's Duty to Supply Plaintiff with Dr. Paley's Report*

29 U.S.C. § 1132(c) provides as follows:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

In *Grossmuller v. International Union*, 715 F.2d at 858, the Third Circuit found the "full and fair review" required by 29 U.S.C. § 1133(2) to place upon the plan fiduciary a duty to allow the plan participant the opportunity to review the evidence upon which the denial of benefits was based. The relief accorded in *Grossmuller* was a remand for a new determination of the claimant's entitlement to benefits. In Count III, however, Plaintiff instead seeks damages under Section 1132(c) for Metropolitan's delay in making Dr. Paley's report available for her review. Defendants seek dismissal of Count III under Fed.R.Civ.P. 12(b)(6), their position being that Section 1132(c) does not embrace violations of Section 1133(2).

A liberal reading of Section 1132(c) renders Plaintiff's theory plausible. Section 1132(c) refers to requests for any information "required by this subchapter," and Section 1133, like Section 1132, is included in Subchapter I of ERISA. Yet, in contrast to the mandatory duties contained elsewhere in Subchapter I as to specific pieces of information to be furnished by the plan administrator to participants, *see* 29 U.S.C. §§ 1022, 1024, 1025, Section 1133(2) does

not itself require that any particular information be furnished to participants by the relevant plan fiduciary. Section 1133(2) simply states that denials of claims are to be handled in accordance with the Secretary's regulations. *See* footnote 1, *infra.* The Secretary's regulations, however, only provide in 29 C.F.R. § 2560.5031(g)(ii) that a "full and fair review" of a denial of benefits must include the claimant's ability to "review pertinent documents."

The Court finds little guidance in the legislative history of ERISA, *see* 1974 U.S. Code Cong. and Adm.News, p. 4639 *et seq.,* and has found no case in which a violation of Section 1133(2) has been found to state a claim under Section 1132(c).[2]

Finally, the Court notes the tension between Plaintiff's attempt to enhance the potency of Section 1133(2) and the restrictive reading given Section 1133 by a majority of the Supreme Court in *Russell.* Justice Stevens, writing for the Court, took the view that the requirements of Section 1133 with respect to claims processing did not rise to the level of the fiduciary duties in the disclosure of information set forth elsewhere in Title I of ERISA:

> It is of course true that the fiduciary obligations of plan administrators are to serve the interest of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan. But the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest. Those duties are described in Part 4 of Title 1 of the Act, which is entitled "Fiduciary Responsibility," see §§ 401–414, 88 Stat. 874–890, 29 U.S.C. §§ 1101–1114, whereas the statutory provisions relating to claim proce-

dures are found in Part 5, dealing with "Administration and Enforcement." §§ 502(a), 503, 88 Stat. 891, 893, 29 U.S.C. §§ 1132(a), 1133. The only section that concerns review of a claim that has been denied—§ 503—merely specifies that every plan shall comply with certain regulations promulgated by the Secretary of Commerce.

—— U.S. at ——, 105 S.Ct. at 3092.

Justice Brennan, joined by three other Justices in his concurrence in the judgment in *Russell,* strongly disagreed with this passage in *Russell* and its apparent suggestion that plan administrators might not be fully subject to strict fiduciary duties to participants in the processing of their claims. He provided this reading of the above-quoted passage in Justice Stevens' opinion:

> The Court apparently thinks there might be some significance in the fact that an administrator's fiduciary duties "are described in Part 4 of Title 1 of the Act ... whereas the statutory provisions relating to claim procedures are found in Part 5." *Ante,* at —— [105 S.Ct. at 3091]. Accordingly, the Court seems to believe that the duties and remedies associated with claims processing might be restricted to those explicitly spelled out in §§ 502(a)(1)(B) and 503. [29 U.S.C. §§ 1132(a)(1)(B) and 1133].

—— U.S. at ——, 105 S.Ct. at 3095. Later in his concurrence, Justice Brennan spoke out for a broader reading of both Section 1132's enforcement provisions and Section 1133's claims procedures, concluding: "[A]n administrator's claims-processing duties and a beneficiary's corresponding remedies are not at all limited to the terms of §§ 502(a)(1)(B) and 503." *Id.*

In light of the opinion of the Court in *Russell* and the light shed on it by the concurrence in that judgment, the Court is

---

**2.** In *Clouatre v. Lockwood,* 593 F.Supp. 1136 (M.D.La.1984), the court considered whether Section 1132(c) provided a remedy for violation of Section 1133. While the court appeared to have no difficulty with the possibility that Section 1132(c) embraces violations of Section 1133, it found plaintiff therein not to have made

a request for the Section 1133 information from the plan administrator. As Section 1132(c), unlike Section 1133, specifically requires that a request be made in order to trigger the administrator's duty, the *Clouatre* court found plaintiff to have failed to state a claim under Section 1132(c).

persuaded that Plaintiff's construction of Section 1132(c) cannot prevail. Accordingly, the Court sustains that portion of Defendants' Motion to Dismiss applicable to Count III of Plaintiff's Amended Complaint on the grounds that said count fails to state a claim upon which relief may be granted.

### IV. *Extracontractual Damages for Delays in Processing.*

 In Count IV of her Amended Complaint, Plaintiff seeks damages for emotional distress as well as punitive damages for Metropolitan's failure to substantiate its denial of her claim for benefits and its undue delay in the processing of her claim. In her memorandum, filed with this Court (Doc. #13), Plaintiff cites 29 U.S.C. § 1109's provision of liability for breach of fiduciary duty as the basis for her cause of action for delay.

To the extent that Count IV focuses upon Metropolitan's denial of benefits to Plaintiff, that portion of Count IV must be dismissed under the doctrine of exhaustion discussed in Part II of this opinion. Plaintiff's cause of action for delay must also be dismissed for failure to state a claim upon which relief may be granted. In *Russell*, all nine Justices agreed that there is no private right of action for a beneficiary or participant under Section 1109 for a plan administrator's delay in processing a claim for benefits. —— U.S. at ——, 105 S.Ct. at 3093–94. This decision overturned the decision of the Ninth Circuit in *Russell v. Massachusetts Mutual Life Ins. Co.*, 722 F.2d 482 (9th Cir.1983), relied upon by Plaintiff.

### V. *Conclusion*

In summary, Counts I and II are dismissed without prejudice due to Plaintiff's failure to exhaust her administrative remedies. Count III is dismissed for failure to state a claim upon which relief may be granted. Count IV is dismissed under both the doctrine of exhaustion and for the reason that it fails to state a claim upon which relief may be granted.

The above captioned matter is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.