The **INTERNATIONAL LOTTO FUND**, Plaintiff,

v.

**VIRGINIA STATE LOTTERY DEPARTMENT and Kenneth W. Thorson**, Defendants.

Civ. A. 92–CV–526.

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 28, 1992.

---

George C. Howell, III, Paul David Anders, Patricia Michaelson Schwarzschild, Hunton & Williams, Richmond, Va., for plaintiff.

Teresa Creef Manning, Michael King Jackson, Office of the Atty. Gen., Richmond, Va., for defendants.

Robert William Jaspen, Asst. U.S. Atty., U.S. Attorney's Office, Richmond, Va., and Robert K. Coulter, Asst. U.S. Atty., U.S. Attorney's Office, Alexandria, Va., for U.S. (amicus).

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on plaintiff's motion for a temporary restraining order and preliminary injunction, pursuant to Fed.R.Civ.Proc. 65(a). The Court held a hearing on the motion in Alexandria, Virginia, on August 17 and took the matter under advisement, giving the parties additional time to further outline their positions.

The International Lotto Fund (the "Fund") requests that the Court compel the defendants to accept the Fund's I.R.S. Form 1001 and to award the Fund its lottery prize without withholding federal or state taxes or, in the alternative, to enjoin the defendants from taking any action that would deprive the Fund of access to its prize. The United States has intervened as a defendant and filed an amicus curiae brief, as well as a supplemental amicus brief.

### I. *Factual Background*

On February 15, 1992, the Fund won a Virginia lottery jackpot prize of $27,036,-142.00, as well as numerous additional prizes for lesser amounts, totalling $662,-868.00. The Fund claimed its prize on March 5, 1992. On March 10, the Virginia State Lottery Department (the "Lottery") announced that it would validate the winning ticket and pay the Fund, indicating at the same time, however, that pursuant to a recommendation from the Internal Revenue Service, it would withhold 30 percent of each payment for federal income taxes and, pursuant to advice from the Virginia Department of Taxation, withhold 4 percent of each payment for state taxes.

The Fund claims that it is not responsible for paying federal withholding tax on its winnings by virtue of Article 7(1) of the United States–Australia Income Tax Treaty (the "Treaty"). The Fund asserts that the Treaty exempts the prize from taxation in the United States, leaving it subject to taxation only in Australia. The Fund submitted a completed I.R.S. Form 1001—which allows a foreign entity to claim an exemption from federal withholding tax based on an applicable treaty provision—on March 24 and again on May 14, along with information which allegedly demonstrated the Fund's entitlement to the Treaty's tax exemption. It seeks payment of its first installment of winnings free of withholding tax. The Lottery, meanwhile, is continuing to withhold the tax at issue.

### II. *Summary of Legal Issues*

Internal Revenue Code Sections 871(a) and 881 (26 U.S.C. §§ 871(a), 881) impose a tax of 30 percent on the gross amount of fixed or determinable annual or periodical gains, profits or income received from sources within the United States by nonresident alien individuals and foreign corporations, to the extent that the amount received is not effectively connected with the conduct of a trade or business within the U.S.Code Sections 1441 and 1442 direct withholding agents to deduct and withhold this tax.

Withholding is not required, however, if the payee of the income is entitled to an exemption from tax under an applicable tax treaty. I.R.C. § 894(a); Treas.Reg. § 1.1441–6. Such a payee is entitled to claim a withholding exemption by filing Form 1001 with the withholding agent. Treas.Reg. § 1.1441–6. Article 7(1) of the U.S.–Australia Treaty [1] provides: "The business profits of an enterprise of [Aus-

---

1. Convention Between the Government of the United States of America and the Government of Australia for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Signed August 6, 1982, T.I.A.S. 10773, 1986–2 C.B. 220, Articles 1–2.

tralia] shall be taxable only in that State unless the enterprise carries on business in the [United States] through a permanent establishment situated therein." The Fund has filed a Form 1001 claiming exempt status under Article 7(1); the Lottery continues to withhold the tax pursuant to I.R.C. Section 1442(a), the section pertaining to foreign corporations.

## III. *Argument*

In order for the Court to preliminarily enjoin the defendants from withholding the disputed tax and compelling them to accept the Fund's Form 1001, the Fund must demonstrate: a) that it is entitled to preliminary injunctive relief under Fed.R.Civ.Proc. 65(a); b) that the Anti–Injunction Act, 26 U.S.C. § 7421, does not preclude the grant of such relief vis-a-vis federal taxes in this case even if Rule 65(a) permits it; and c) that the Tax Injunction Act, 28 U.S.C. § 1341, does not preclude the grant of such relief in regard to state taxes, again, even if such relief is permissible under Rule 65(a).

### A. The Fund is Entitled to Preliminary Injunctive Relief under Rule 65(a)

■ The grant or denial of a preliminary injunction rests in the sound discretion of the trial court. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189 (1940); *First–Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir.1970).

■ The Court must consider four factors in deciding whether to grant a preliminary injunction:

1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted;

2) the state of the balance between this harm and the injury that granting the injunction would inflict on the defendant;

3) the probability that the plaintiff will succeed on the merits; and

4) the public interest.

11 Wright & Miller, Federal Practice and Procedure, § 2948 at 430–31 (1973); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir.

1985). Although the Court should consider all four of these factors in ruling upon a Rule 65(a) motion, "the two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree." *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). If the harm to the plaintiff greatly outweighs the harm to the defendant, the preliminary injunction is to be granted; "the plaintiff need not show a likelihood of success on the merits, for a grave or serious question is sufficient." *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1032–33 (4th Cir. 1980).

■ The Court should resolve the balance-of-hardship test in the Fund's favor. The Fund has set forth several reasons why it will be irreparably harmed absent immediate relief. By contrast, the defendants are not likely to suffer any notable harm as a result of a decree being entered in plaintiff's favor.

The Fund is a cash-intensive operation which generates its monies by participating, on a very large scale, in lotteries and other games of chance throughout the world. By conditioning the receipt of its lottery winnings on withholding, the Lottery has severely limited the Fund's ability to engage in its livelihood. It is exceedingly difficult to estimate the value of the business opportunities the Fund has lost and will continue to lose as a result of the withholding.

The Fund also has suffered damage to its business reputation as a result of its inability to receive the money it won. Unitholders in the Fund are apparently considering withdrawing from the organization which, on a sufficiently wide scale, could have a devastating effect on the continued existence of the entity. Such losses are, as the Fourth Circuit has recognized, "incalculable." *Blackwelder*, 550 F.2d at 197 ("The harm posed to Blackwelder's general goodwill by its inability to fill outstanding orders in excess of $15,000 for furniture listed in its catalogues is incalculable—not incalculably great or small, just incalcula-

ble."). The Fund is also being deprived of accumulated interest on its money, interest that is permanently retained by the Lottery and which can never be recouped by the Fund.

The Fund is managed by Lowe & Lippmann Nominees Pty. Ltd. ("Lowe Lippman"), the appointed Trustee of the Fund. Joseph Franck, a director of Lowe Lippman, has filed an affidavit in this case which verifies the irreparable nature of the harm which the Fund will suffer if the Fund does not receive its winnings free from withholding. This affidavit is uncontroverted and has not been challenged by the defendants in any fashion.[2]

■ On the other hand, it is difficult to see how the defendants will suffer more than minimal harm if the injunction is entered. First, it is highly unlikely that the Lottery would face liability as an I.R.S. withholding agent for making payment free from withholding. A withholding agent is permitted to assume the veracity of factual representations made under penalty of perjury in connection with the submission of a Form 1001 and is not responsible for misstatements made by the income recipient unless the agent has actual knowledge of the falsity of the representations or otherwise has reason to know that the recipient is ineligible for the claimed treaty benefit. Rev.Rul. 85–4, 1985–1 C.B. 294, 295; Rev.Rul. 76–224, 1976–1 C.B. 268, 269.[3] The Lottery has not claimed to have any knowledge that the Fund's factual representations are false and does not appear to possess any information that refutes the Fund's claim that it is covered by Article 7(1) of the Treaty.

Furthermore, the withholding agent in this case has made the decision to withhold; thus, it would be impossible to hold it liable for failing to withhold. It is not tenable to argue that the agent might be found liable for failing to withhold if the court enters an order compelling the agent to accept the Form 1001 and, accordingly, release the funds free from withholding.

The Internal Revenue Service would not appear to be significantly harmed by a preliminary injunction either. If the I.R.S. wishes at some point to evaluate the Fund's claim of exemption under the Treaty, this ruling in no way prevents it from doing so. It cannot be considered harmful to the I.R.S. to compel one of its withholding agents to accept a form and release funds in accordance with the very procedures set up by the I.R.S.

**B. The Anti–Injunction Act Does Not Preclude the Relief Requested by the Fund**

■ The defendants contend that the relief requested by the Fund is expressly prohibited by the federal Anti–Injunction Act, 26 U.S.C. § 7421 (the "Act"), and, thus, that the Court is without subject matter jurisdiction to grant the requested injunctive relief. The Act provides, in pertinent part:

> Except as provided in [Internal Revenue Code] sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), and 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). The purpose of the Act is "to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292

---

**2.** Defendants claim only that the Fund's injuries are not sufficient to evade the Anti–Injunction Act, noting that the Act "may not be evaded merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise." (Def's Mem.Supp.Mot. to Dismiss at 9, *citing Bob Jones Univ. v. Simon,* 416 U.S. 725, 745, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974)). Since the Court holds that the Fund's request does not directly implicate the Anti–Injunction Act, this argument is irrelevant, and does nothing to call into question the propriety of preliminary injunctive relief in this case.

**3.** In fact, the Lottery was directly informed of this policy by a letter from the Internal Revenue Service to the Lottery, dated July 27, 1992.

(1962). The Supreme Court has specifically noted that the Act applies to the withholding context. *United States v. American Friends Serv. Comm.*, 419 U.S. 7, 10, 95 S.Ct. 13, 15, 42 L.Ed.2d 7 (1974).

The Fund contends instead that its suit is not one to restrain the assessment or collection of tax, but to compel the Lottery to perform its ministerial duties as a withholding agent and accept the Fund's properly completed Form 1001. The defendants believe this characterization of the requested relief is an attempt to divert the Court's attention from the practical effect of an injunction in this case, which in the defendants' view, would be to restrain the assessment and collection of the Fund's federal income tax.

The injunction requested by the Fund does not implicate the Anti–Injunction Act. It does not restrain the I.R.S. from assessing or collecting the Fund's income tax; it simply compels its withholding agent to follow the procedures the I.R.S. has established for collecting taxes when an exemption is claimed under an international treaty.

The I.R.S. expressly permits a withholding agent to assume the validity of the facts underlying a claim to treaty benefits, and does not hold him responsible for misstatements in Form 1001 unless the withholding agent has reason to know that the owner is not eligible for the claimed benefits. Rev.Rul. 85–4 C.B. 294, 295; Rev.Rul. 76–224, 1976–1 C.B. 268, 269. The Internal Revenue Code, Treasury Regulations and Form 1001 itself nowhere indicate that any legal determination to treaty benefits must be made at or before the time the form is accepted in order to receive the requested relief from withholding. The I.R.S.'s scheme of tax collection contemplates the acceptance of a properly prepared Form 1001—absent knowledge by the withholding agent of falsities contained within it—and the subsequent release of the claimed funds free from withholding. The I.R.S. has not implemented any mechanism to closely scrutinize the validity of a payee's claim of tax exemption under an international treaty until after the payee has received the money free from withholding and filed its income tax return. The I.R.S. clearly has not contemplated the performance of an ad-hoc audit, conducted by the withholding agent, upon submission of the Form 1001. The plaintiff simply sues in this case to compel the withholding agent to adhere to the scheme that the I.R.S. created for addressing claims of exemption under international treaties.

The role of a withholding agent is ministerial in nature. *Holmstrom v. PPG Indus., Inc.*, 512 F.Supp. 552, 557 (W.D.Pa. 1981). The agent is not granted the discretion by the I.R.S. to conduct an audit-like inquiry upon submission of a properly completed Form 1001. Thus, it is performance of the non-discretionary, routine duties of a withholding agent required by the Treasury Regulations, and not the determination of the tax liability of any party, which is the goal of the requested injunctive relief.

There appears to be only one federal opinion, *Holmstrom, supra*, that squarely addresses the propriety of enjoining a withholding agent to accept a Form 1001 from a foreign person claiming an exemption from taxation, and it firmly supports the Fund's position. In *Holmstrom*, the plaintiff, a Swedish national, sought a declaratory judgment with respect to his benefits under his former employer's retirement plan. The plaintiff contended that under a treaty between Sweden and the United States his pension benefits were exempt from taxation in the U.S. and, hence, from withholding. *Id.* at 556. The defendant moved to dismiss based on the federal tax exception to the Declaratory Judgment Act. Although the *Holmstrom* court did not find it necessary to rule upon the defendant's motion to dismiss, it gave thorough consideration to the merits of his claim. Its analysis is of considerable value to the Court in this case:

> The plaintiff in the present case does not ask for a declaration that the subject withholding taxes may not be withheld, in the sense that the Internal Revenue Service is bound by this determination; but, rather, that the Administrator of Defendant Plan must accept and process

plaintiff's completed Form 1001. Thus the most the plaintiff can receive from this Court is a determination that Form 1001 must be accepted by the administrator of the Defendant Plan.... If the Internal Revenue Service wishes at some point to review the plaintiff's claimed exemption, no adverse judicial determination can impede it from doing so, and this can be accomplished without risk of liability to the withholding agent for a failure to withhold taxes.

No actual controversy exists between the U.S. government and the plaintiff. Although federal taxes are incidentally involved, plaintiff has not challenged the propriety or validity of the applicable withholding tax statutes nor has the plaintiff sought to impede the assessment or collection of federal taxes by the government. The instant proceeding is not aimed at the adjudication of any rights as between the plaintiff and the government and, if any rights do exist, they will be unaffected by the judgment rendered in this case. The controversy ... is whether or not the defendants should be required to perform a routine function as a withholding agent, and the judgment rendered in this case will settle that question and no other.

512 F.Supp. at 558.

 The Fund has presented the Lottery with a properly completed Form 1001 and with a certificate of factual representations supporting its claim to exemption under the Treaty that it has offered to sign under penalty of perjury. The Lottery has not indicated that it possesses any information beyond that contained in the Fund's factual representations that gives it reason to know that the Fund is ineligible for the treaty exemption it claims or that any of the Fund's factual representations are false.[4] In the absence of such knowledge, the Lottery, in its limited role as withholding agent, is required to accept the Form

1001. Its refusal to accept the form appears to be predicated on a determination that the information provided by the Fund is factually insufficient to establish an entitlement to the exemption under the Treaty. But the I.R.S.'s tax administration scheme does not contemplate that such a thorough, conclusive determination be made at this stage of the game. Such an evaluation in the foreign withholding context is made, and still can be made, when and if the I.R.S. audits the Fund's income tax return.

**C. The Tax Injunction Act Does Not Prevent the Fund from Receiving its Payment Free from State Withholding Tax**

Va.Code § 58.1–4006 empowers the Director of the Virginia Lottery to withhold state and federal income tax of persons claiming a prize for a winning lottery ticket in excess of $5,000. Under Virginia law, the term "person" includes any individual, corporation, partnership, association, company, business, trust, joint venture or other legal entity. See Va.Code § 1–13.19. Virginia Regulation (VR) 630–3–4006 requires the Lottery Department to withhold Virginia income tax at the rate of 4 percent on the proceeds from any lottery prize in excess of $5,000. Pursuant to this regulation, the Lottery is withholding 4 percent of the Fund's winnings.

 The defendants allege that the Tax Injunction Act, 28 U.S.C. § 1341, prevents the Court from granting injunctive relief against the withholding of these state taxes. (Def's Mem.Supp.Mot. to Dismiss at 13–14). This statute is intended to prevent federal court interference with the administration of state tax systems. See generally Rosewell v. LaSalle Nat. Bank, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). But an injunction in this case does not interfere with state tax administration in the feared manner. In a letter dated June 18, 1992, the Virginia Department of

---

4. It is worth noting that the Fund has been especially forthcoming in providing information to the Lottery. In addition to filing the Form 1001 and supplemental factual representations, the Fund recently provided answers to a request made by Defendant Kenneth Thorson, Director

of the Virginia State Lottery Department, for additional information which he deemed important to his determination. (Letter from Schwarzschild and Howell to Thorson of 8/4/92).

Taxation stated its well-reasoned desire to act consistently with federal tax authorities on this matter: "Should the IRS rule that the Fund is entitled to relief under the Australian–U.S. Treaty, then the Commonwealth will honor that ruling." (Letter from Forst to Millhiser of 6/18/92, at 1–2). The Court's injunction compelling federal tax authorities to accept the Form 1001 is the functional equivalent of the I.R.S. deciding to do so itself. In light of the Virginia Department of Taxation's expressed desire to act consistently with federal tax officials on this matter, the Court orders that state tax not be withheld.[5]

### D. Conclusion

The Court deems preliminary injunctive relief to be proper in this case. Therefore, the plaintiff's motion is GRANTED. Kenneth W. Thorson and the Virginia State Lottery Department are hereby ordered to accept the International Lotto Fund's Form 1001 as heretofore tendered, and to take the steps required by the Internal Revenue Service pursuant to acceptance of this form.

It is so ORDERED.

---

**5.** Thus, the Court is not compelled to address how this issue would have been resolved under the Tax Injunction Act had the State Department of Taxation not specifically expressed its desire to act in conformity with the I.R.S. on this matter.