**FIRST–CITIZENS BANK & TRUST COMPANY, Appellee,**

v.

**William B. CAMP, Comptroller of the Currency of the United States, and First National Bank of Eastern North Carolina, Appellants.**

**No. 13859.**

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1970.

Decided Oct. 23, 1970.

Robert V. Zener, Atty., Dept. of Justice (William D. Ruckelshaus, Asst. Atty.

Gen., and Robert H. Cowen, U. S. Atty., on brief), for appellant William B. Camp.

Carl V. Venters, Jacksonville, N. C., for appellant First National Bank of Eastern N. C.

William R. Hoke, Raleigh, N. C. (Jordan, Morris & Hoke, Raleigh, N. C., on brief), for appellee.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

BOREMAN, Circuit Judge:

First National Bank of Eastern North Carolina (hereafter First National) applied to the Comptroller of the Currency of the United States (hereafter the Comptroller) for permission to establish a branch office in downtown Raleigh, North Carolina. This application was protested by the First-Citizens Bank & Trust Company (hereafter Citizens), a state chartered bank. After learning that the application had been approved, Citizens brought an action in the district court against the Comptroller and First National for declaratory and injunctive relief.

While this action was pending before the district court, the decision in First-Citizens Bank & Trust Company v. Camp, 409 F.2d 1086 (4 Cir. 1969), was handed down, in which we held that the Comptroller must abide by a North Carolina statute which requires that a bank doing business in North Carolina may establish a branch bank only if it is found:

"* * * (i) that the establishment of such branch * * * will meet the needs and promote the convenience of the community to be served by the bank, and (ii) that the probable volume of business and reasonable public demand in such community are sufficient to assure and maintain the solvency of said branch * * * and of the existing bank or banks in said community." N.C.Gen. Stat. § 53–62(b).

Accordingly, the parties stipulated that legal proceedings should be stayed so that the case could be returned to the Comptroller for additional administrative proceedings. After reconsideration the Comptroller issued a seven-page opinion affirming his earlier approval of First National's application. In his opinion, the Comptroller made detailed findings of fact which had led to his approval of the application and specifically found that the establishment of the branch met the "need and convenience" and the "solvency of the branch and other banks" requirements of the above-quoted North Carolina statute.

Citizens thereafter reinstated its action in the district court, alleging arbitrary and capricious action and an abuse of discretion on the part of the Comptroller in approving the application, and asking for a preliminary injunction to restrain the Comptroller from issuing his certificate of approval to First National and to restrain First National from opening the branch, pending a decision on the merits. A hearing was scheduled on the issuance of the preliminary injunction for June 11, 1969. Counsel for all parties appeared for the hearing at the stated time, but the judge was then engaged in hearing another matter. Following the conclusion of the other matter before the district judge, counsel met with the court in chambers. No testimony was taken, and Citizens filed no affidavits; First National filed an affidavit setting forth its prospective damages which would be suffered if the opening of the branch were to be delayed. The court informed counsel that it would enter a preliminary injunction unless the parties entered into a stipulation that no certificate of authority from the Comptroller's office would be issued and that First National would not open the branch until such time as the court could reach a decision on the merits. When the court could not indicate the approximate date upon which a decision on the merits would be reached, counsel for the Comptroller refused to enter into such a stipulation; counsel for the Comptroller by letter dated June 13, 1969, notified the court that the Comptroller would agree to withhold the cer-

483

tificate of authority until June 30, 1969, but would not agree to an "open ended stay" because the effect of such a policy would be to encourage future frivolous litigation solely for the purpose of delay.

On June 23, 1969, without making findings of fact, the district court issued an order granting the preliminary injunction on the ground that irreparable damage would be done to Citizens if First National were permitted to open its branch and it was later determined to have been an unlawful opening. Citizens was required to post a $5,000 bond for the payment of costs and damages suffered by First National should it eventually be found that the injunction was wrongfully entered. First National and the Comptroller appeal from the order granting the injunction.

 The granting or denying of a motion for a preliminary injunction, pending final determination on the merits, is ordinarily within the sound discretion of the district court. Prendergast v. N. Y. Tel. Co., 262 U.S. 43, 50–51, 43 S.Ct. 466, 67 L.Ed. 853 (1923); Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94, 96 (4 Cir. 1950). The inquiry upon appeal from a grant or denial of a preliminary injunction is limited to the question whether the court abused its discretion. United States v. Corrick, 298 U.S. 435, 437–438, 56 S.Ct. 829, 80 L.Ed. 1263 (1936); Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94, 96 (4 Cir. 1950), *supra.*

 However, a motion for a preliminary injunction is not to be granted automatically since "[t]he award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff." Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944); Scripps-Howard Radio v. Comm'n, 316 U.S. 4, 10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942). Accordingly, it has been held by numerous courts,

including this one, that in deciding whether to stay the execution of an administrative agency's decision, a court is required to consider four factors:

"(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal?

"(2) Has the petitioner shown that without such relief it will be irreparably injured?

"(3) Would the issuance of a stay substantially harm other parties interested in the proceeding?

"(4) Where lies the public interest?" Airport Comm. of Forsyth County, North Carolina v. C. A. B., 296 F.2d 95, 96 (4 Cir. 1961).

This standard was adopted in Virginia Petroleum Jobbers Ass'n v. F.P.C., 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958), and has been applied in most other circuits. Belcher v. Birmingham Trust National Bank, 395 F.2d 685, 685–686 (5 Cir. 1968); Hamlin Testing Laboratories, Inc. v. A.E.C., 337 F.2d 221, 222 (6 Cir. 1964); Baggett Transportation Co. v. Hughes Transportation, Inc., 393 F.2d 710, 716–717 (8 Cir. 1968), cert. denied, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272; Schwartz v. Covington, 341 F.2d 537, 538 (9 Cir. 1965); Associated Securities Corp. v. S.E.C., 283 F.2d 773, 774 (10 Cir. 1960); Eastern Air Lines v. C.A.B., 261 F.2d 830 (2 Cir. 1958). Since the district court's injunction had precisely the same effect as would the issuance of a stay, the Comptroller correctly observes that the district court was required to consider these same four factors prior to issuing a preliminary injunction.

The necessity for full findings of fact is emphasized by the requirements of Rule 52(a), Fed.R.Civ.P., which provides, in pertinent part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and *in granting or refusing interlocu-*

*tory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."* (Emphasis added.)

The Supreme Court has admonished lower courts as to the necessity for findings, stating in Mayo v. Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940):

> "It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure."

The Court had stated earlier in Public Service Commission of Wisconsin v. Wisconsin Telephone Co., 289 U.S. 67, 69, 53 S.Ct. 514, 515, 77 L.Ed. 1036 (1933):

> "We have repeatedly emphasized the importance of a statement of the grounds of decision, both as to facts and law, as an aid to litigants and to this Court."

In City of Sumter v. Spur Distributing Co., 110 F.2d 649 (4 Cir. 1940), this court reversed the award of an interlocutory injunction because there were no findings of facts as required by Rule 52 (a) and there was not a sufficient statement of facts elsewhere in the record to disclose the grounds upon which the lower court's decision was based.

 It is true, as Citizens contends, that findings are not required in a case in which there are no factual disputes, Urbain v. Knapp Brothers Manufacturing Company, 217 F.2d 810, 816 (6 Cir. 1954), cert. denied, 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260 (1955), but here there are numerous contested factual issues which require resolution before it could be determined whether an injunction should have been issued. Such vital factual issues couched in terms similar to those questions framed in Airport Comm. of Forsyth County, North Carolina v. C.A.B., 296 F.2d 95, 96 (4 Cir. 1961), include: Did Citizens make a strong showing that the action of the Comptroller in approving First National's application for a branch was arbitrary, capricious and an abuse of discretion and, therefore, that Citizens was likely to prevail upon the merits; did Citizens show that without injunctive relief it would be irreparably injured; would First National be substantially harmed by the issuance of an injunction; and would the public interest be benefitted by the issuance of an injunction? The resolution of these questions would necessarily require factual findings. Especially perplexing is the absence of any specific allegation by Citizens as to specific damages which it would suffer if the First National branch were opened. Citizens filed no affidavit with the district court showing specific damages, but instead contented itself with its general allegation of "irreparable injury" contained in its complaint. On the other hand, it would seem that the only evidence of specific damage which might be sustained by any party was the evidence contained in the affidavit of First National's president which was submitted to the district court.

The district court's issuance of a preliminary injunction without making findings of fact in accordance with Rule 52(a) in this case which involved numerous factual conflicts was error, and requires reversal of the order granting such injunction.

 First National claims that it is entitled to damages as a result of the issuance of the injunction. It would appear that First National is entitled to damages; but, as First National correctly concedes, the amount of the bond provided by Citizens limits the amount of recovery. International Ladies Garment Workers Union v. Donnelly Garment Co., 147 F.2d 246, 253 (8 Cir. 1945), cert. denied, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972; Northeast Airlines, Inc. v. World Airways, Inc., 262 F.Supp. 316, 319 (D.Mass.1966); Jamaica Lodge 2188, Etc. v. Railway Express Agency, Inc., 200 F.Supp. 253, 254–255 (E.D.N.Y. 1961); Monolith Portland Mid. Co. v.

Reconstruction F. Corp., 128 F.Supp. 824, 877 (S.D.Cal.1955).[1]

The order granting the preliminary injunction is reversed. The case is remanded to the district court for a hearing as to damages sustained by First National by reason of the improvident issuance of the injunction order and for the award of such damages within the limits of the $5,000 bond. The court below should proceed to a final determination of this case on the merits.

Reversed and remanded.

See also D.C., 246 F.Supp. 1022.

---

1. First National contends that the court below abused its discretion and thus erred in not permitting a hearing before fixing the amount of the bond at $5,000; that, on remand, the district court should permit "the defendants to be heard in this regard" and should reconsider the correctness of the amount of the bond. We find no merit in this contention.