CORNING SAVINGS AND LOAN
ASSOCIATION; and The
Corning Bank, Plaintiffs,

v.

FEDERAL HOME LOAN BANK BOARD;
and Richard Pratt, James J. Jackson
and Andrew Di Prete, as Members of
Said Board and Pocahontas Federal
Savings & Loan Association, Defendants.

No. LR–C–83–69.

United States District Court,
E.D. Arkansas, W.D.

April 13, 1983.

John P. Gill, Gill, Skokos, Simpson, Buford & Owen, Little Rock, Ark., for plaintiffs.

Harvey Simon, Assoc. Gen. Counsel, Jonathon K. Heffron, James T. Lantelme, Trial Attys., Washington, D.C., for Federal Home Loan Bank Bd.

James W. Lance, Little Rock, Ark., John F. Forster, Jr., Wallace, Hilburn, Clayton, Calhoon & Forster, North Little Rock, Ark., for Pocahontas Federal Sav. & Loan.

## MEMORANDUM OPINION

ROY, District Judge.

Pending before the Court is the motion of plaintiffs Corning Savings and Loan Association and The Corning Bank to stay the effectiveness of a resolution of defendant Federal Home Loan Bank Board ("Board") dated January 20, 1983. Pursuant to this resolution and a final approval document dated January 21, 1983, the defendant Pocahontas Federal Savings & Loan Association ("Pocahontas") opened a branch office in Corning, Arkansas, on January 22, 1983.

Plaintiffs seek to stay the Board's resolution pursuant to the Administrative Procedure Act, 5 U.S.C. § 500, et seq., wherein it is provided that,

"When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

The original motion to stay was filed on January 27, 1983, and was accompanied by a short brief which offered only a superficial review of the issues, omitting any discussion of the criteria necessary for granting the stay. Pursuant to an agreement reached between counsel for plaintiffs and counsel for the Board, a briefing schedule was established whereby all defendants were afforded an opportunity to respond to plaintiffs' initial motion. The plaintiffs were then given another chance to more fully brief the issues, after which the defendants were given a final option of replying to the plaintiffs' supplemental brief. This briefing schedule has now been completed and the Court is in a position to rule upon the motion for stay.

The parties are in agreement that the test to be applied as to whether a stay should be entered is the same as that which applies to requests for preliminary injunctions, which test has recently been clarified by the Eighth Circuit Court of Appeals to involve consideration of,

"(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc., v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (1981).

These same tests have been repeatedly applied by the courts in deciding whether preliminary relief should be issued against the Federal Home Loan Bank Board, as well as other federal financial institution regulatory agencies. See, *e.g., First-Citizens Bank & Trust Co. v. Camp,* 432 F.2d 481, 483 (4th Cir.1970); *Guaranty Savings and Loan Ass'n v. FHLBB,* 330 F.Supp. 470, 472 (D.D.C.1971); *Garlock, Inc. v. United Seal, Inc.,* 404 F.2d 256, 257 (6th Cir.1968); *Carlson Companies, Inc., v. Sperry & Hutchinson Co.,* 374 F.Supp. 1080, 1097 (D.Minn.1974); *Goodyear Tire & Rubber Co. v. H. Rosenthal Co.,* 246 F.Supp. 724, 726 (D.Minn.1965).

The Court in *Dataphase, supra,* stated further that,

"At base, the question is whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." 640 F.2d at 113.

Injunctions are "extra-ordinary legal remedies and are granted sparingly and under strict rules for the protection of all parties." *Greater Iowa Corporation v. McLendon,* 378 F.2d 783, 799 (8th Cir.1967). As a result, such a drastic remedy will not be granted unless a plaintiff clearly demonstrates that it is entitled to preliminary restraints in accordance with the criteria set forth by the Court of Appeals. *Dakota Wholesale Liquor v. Minnesota,* 584 F.2d 847, 849 (8th Cir.1978); *Chicago Stadium Corp. v. Scallen,* 530 F.2d 204, 206 (8th Cir.1976). Whether or not an injunction is granted is a matter within the sound discretion of the trial court. *First-Citizens Bank & Trust Co. v. Camp, supra.*

In the instant case the Court is in effect not being asked to preserve the status quo but rather is being petitioned to issue a mandatory injunction which would return the parties to the status they enjoyed prior to the Board's issuance of its January 20, 1983, resolution and prior to the opening of the Pocahontas branch office on January 22, 1983.

An order granting the plaintiffs' motion for stay would have the practical effect of closing the Pocahontas branch office in Corning pending the final outcome of this lawsuit.

The Court finds this to be the practical effect of granting the plaintiffs' motion despite the somewhat confusing statement in plaintiffs' February 28, 1983, brief that,

"Plaintiffs have not sought an order from this Court directing a party, Pocahontas Federal Savings & Loan, to cease operations pending judicial review, nor have plaintiffs sought an order requiring defendant Federal Home Loan Bank Board to rescind its earlier resolution. Plaintiffs merely seek an order staying the effectiveness of the Board's resolution. Plaintiffs seek a stay, which as an *in rem* remedy is directed only at the Order, not a party." (Brief at p. 4.)

The Court finds that if the effectiveness of the Board's resolution is stayed as requested by the plaintiffs, then Pocahontas would have no authority to operate its branch in Corning and would be forced to close it immediately. See 12 C.F.R. § 545.-14(a), which states that,

"§ 545.14 *Branch Offices.*

(a) *General.* A branch office of a Federal association is any office other than its home office, agency office, data processing or administrative office, or a remote service unit. Except as limited by this section, any business of a Federal association may be transacted at a branch office. Except as provided in paragraph (j) of this section, *a Federal association shall not establish a branch office without prior written approval of the Board of its Principal Supervisory Agent.*" (Emphasis added.)

The Board's resolution approving the opening of the Corning branch constitutes the prior written approval of the branch. If this Court were to stay the effectiveness of the Board's resolution, then Pocahontas would cease to have the "prior written approval of the Board" and thus would have no authority to operate the Corning branch. The Court agrees with Pocahontas' assessment in its March 25, 1983, brief that the plaintiffs' distinction between an *in rem* and an *in personam* remedy amounts to a distinction without a difference in this case. Plaintiffs' requested *in rem* remedy has exactly the same effect as an *in personam* remedy, to wit, that Pocahontas Federal would be faced with operating a branch without the required prior written approval by the Board and thus would have to close its doors.

Later in their brief the plaintiffs seem to admit that their goal is in fact to obtain the closure of the Pocahontas branch:

"Second, and even more fundamental, Defendants' analysis of this issue deals only with the harm Plaintiffs will ultimately suffer as a result of another approved savings and loan institution in Corning. They ignore completely the serious damage which Plaintiffs will suffer during the pendency of this action—damages done by a competitor who, Plaintiffs are confident, will be closed once the circumstances behind the approval of the Pocahontas application are made known to the Court.

"Without the requested preliminary stay, Plaintiffs are faced with immediate and irreparable harm ..." (p. 16)

"Neither Plaintiff can afford to continue to lose deposits to Pocahontas Federal Savings and Loan Association pending this Court's consideration of Plaintiffs' lawsuit ... Neither Plaintiff can afford to suffer such losses pending resolution of this lawsuit and this Court should thus grant Plaintiffs' Motion to Stay in order to prevent irreparable harm to Plaintiffs." (p. 19)

"The Public's confidence in a savings and loan will certainly be more threat-ened by the closing of an established institution than by the closing of a controversial, little desired branch." (p. 23)

■ The Court thus finds that what the plaintiffs are seeking and what the effect of granting the motion for stay would be is to shut down the Corning branch of Pocahontas Federal Savings and Loan pending the resolution of this lawsuit. Since the plaintiffs are not seeking to preserve the status quo, but rather are asking the Court to upset the status quo and to temporarily return the parties to the positions they were in three months ago, the Court finds that the plaintiffs should be held to an even higher burden than that set forth in *Dataphase, supra.* Courts "are more reluctant to grant a mandatory injunction than a prohibitory one and ... generally an injunction will not lie except in prohibitory form." *Clune v. Publishers' Association of New York City,* 214 F.Supp. 520, 531 (S.D. N.Y.1963).

■ After reviewing the briefs and exhibits filed by the parties in connection with the motion to stay, the Court finds that the plaintiffs have failed to meet the basic tests of *Dataphase, supra.* The burden is always on the moving party to establish the prerequisites for injunctive relief. *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); *United States v. Dorgan,* 522 F.2d 969 (8th Cir. 1975), aff'd, 429 U.S. 953, 97 S.Ct. 373, 50 L.Ed.2d 320 (1976). In the case at bar, the plaintiffs have failed to meet this burden.

In their February 28, 1983, brief plaintiffs state that,

"Without the requested preliminary stay, Plaintiffs are faced with immediate and irreparable harm. Simply stated, the present economic outlook for Clay County, a predominantly agricultural area, is bleak; an additional financial institution in Clay County is unthinkable."

Plaintiffs then go on to state that the failure of the Pocahontas branch could likely lead to a panic in the community which would result in a run on the deposits of the plaintiff institutions. An analogy to the failure of the Bank of Tillar is then made in

order to demonstrate the effect which the collapse of a financial institution can have upon a community. (Plaintiffs' brief at pp. 16, 17.)

The Court makes several observations about these arguments of the plaintiff: First, it should be noted that the circumstances surrounding the Bank of Tillar are not presently before the Court and therefore this analogy is not well taken.

Second, the injuries which plaintiffs stand to suffer are exclusively monetary. With the opening of Pocahontas' branch office in Corning, the plaintiffs face the possibility of losing a share of the new savings market and also perhaps some of their present accounts or portions thereof.

 It is well settled that monetary loss, even where substantial, does not, in and of itself, constitute irreparable harm. *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir.1975); *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921 (D.C.Cir. 1958); *Clune v. Publishers' Association of New York City, supra.* Monetary loss may constitute irreparable harm only where the movant's very existence is threatened, i.e., where an act threatens an ongoing business with destruction as opposed to mere disruption. *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24 (2d Cir. 1978); *Newport Tire & Rubber Co. v. Tire & Battery Corp.,* 504 F.Supp. 143 (E.D.N.Y. 1980); *Janmort Leasing, Inc. v. Econo-car International, Inc.,* 475 F.Supp. 1282 (E.D. N.Y.1979).

 The Court finds that in the instant case plaintiffs have not demonstrated that the continued operation of the Pocahontas branch will likely result in the destruction of plaintiffs' business; thus no "irreparable harm" has been shown as that term has been defined in the cases.

The third observation which the Court is compelled to make with regard to the plaintiffs' argument involves plaintiffs' assertion that,

". . . the failure of Pocahontas would adversely impact on the deposits at the other two [plaintiffs'] institutions. Financial institution failures can cause a run on the deposits of even the most sound financial institution." (Plaintiffs' brief at p. 17.)

While presumably the plaintiffs are referring to the closing of the Pocahontas branch at some future time resulting in a public panic, the Court finds the plaintiffs' logic to be equally pertinent to the closing of Pocahontas at the present time. As of February 14, 1983, some 169 savings accounts had already been opened at the Pocahontas branch in Corning. For the Court to enter an order which in effect would cause the cessation of Pocahontas' operations in Corning until this case is resolved on the merits would, in the Court's view, cause unnecessary distress to the people of the Corning community, both to those who have deposited funds with Pocahontas and to those who have not. Public confidence in all of Corning's financial institutions could likely be shaken if the Court granted the drastic remedy of closure of the Pocahontas branch at this time, prior to a determination that the branch was improperly opened in the first place.

Thus, the plaintiffs have failed to demonstrate how the granting of the requested stay would be in the best interest of the public. To the contrary, via the above-referenced statements in their own brief, they have indicated that just the opposite would be true.

 With respect to the remaining *Dataphase* considerations, the Court finds that the plaintiffs have not succeeded in demonstrating the probability of their success on the merits. As pointed out by the Eighth Circuit, this is not a test which can be applied with mathematical precision; courts must be flexible enough to encompass the particular circumstances of each individual case. *Dataphase, supra,* 640 F.2d at 113. The same may be said for the determination of the balance between the harm claimed by the movant and the injury which granting the injunction will inflict upon the other parties to the lawsuit. *Id.*

**284**

Keeping in mind that the plaintiffs do not seek a mere preservation of the status quo, but rather are asking the Court to drastically alter the status quo pending a resolution of the merits, the Court finds that the balance of the equities tips in favor of the other parties litigant and of the general public of the Corning area. While the plaintiffs have raised numerous and serious allegations in their complaint, the Court cannot say with confidence that the plaintiffs have shown a sufficient chance for success on the merits so as to warrant the imposition of a mandatory injunction. Moreover, the Court finds that the harm to the defendants and to the public outweighs that which may accrue to the plaintiffs during this interim period.

Therefore, for the reasons set forth above, the plaintiffs' motion for stay is denied.