**J.H., a Minor Child, by his Parents and Next Friends, DAVID H. and Marsha H., Plaintiff,**

v.

**ABC CARE, INC., Defendant.**

**Civil No. H–96–3237.**

United States District Court,
D. Maryland.

Dec. 20, 1996.

Beth Pepper and Stein & Schonfeld, Baltimore, MD and Stewart B. Oneglia and Horowitz & Foran, Greenbelt, MD, for Plaintiff.

Edmund J. O' Meally and Blum, Yumkas, Mailman, Gutman & Denick, Baltimore, MD, for Defendant.

## *MEMORANDUM OPINION*

ALEXANDER HARVEY, II, Senior District Judge.

The parents of an eight year old child have here sued a day care center on behalf of their son, seeking relief under the Americans With Disabilities Act of 1990 (the "ADA" or the "Act"), 42 U.S.C. §§ 12101, *et seq.*, and under state law. Plaintiff J.H., by his parents and next friends, David H. and Marsha H., has here sued defendant ABC Care, Inc. ("ABC Care").[1] Plaintiff alleges that he has a disability and that defendant ABC Care wrongfully expelled him from and later refused to readmit him into its after school day care program in violation of the ADA.

Count I charges a violation of the ADA. Count II alleges that defendant intentionally misrepresented certain statements and material facts, and Count III seeks a recovery from defendant for the intentional infliction of emotional distress. As relief, plaintiff seeks a preliminary and permanent injunction, compensatory and punitive damages, and attorneys' fees and costs.

Presently pending are plaintiff's motion for a preliminary injunction[2] and defendant's motion for summary judgment. In support of these motions, the parties have submitted memoranda of law, affidavits and numerous exhibits. A hearing on the motions has been held in open court.

---

1. By Order of Court, the child and his parents have been permitted to proceed anonymously.

2. Plaintiff's motion for a temporary restraining order was previously denied by the Court.

Following its review of the record here, this Court has concluded that the motion for summary judgment of defendant ABC Care must be granted. Since there is no merit to any of the claims asserted by plaintiff in this case, plaintiff's motion for a preliminary injunction will be denied.

I

*Facts*

J.H. is an eight year old boy[3] presently enrolled in the second grade at St. John's School, a Roman Catholic parochial school located in Westminster, Maryland. J.H. has attended St. John's since the 1994–95 school year, during which he was in kindergarten. In late August, 1994, J.H. enrolled in the after-care program operated by defendant ABC Care in St. John's school buildings. In October of 1995, he was expelled from the program, and he has not been readmitted since then.

The program is open not only for St. John's students but also for students from other schools in the area. It is licensed to serve a total of seventy-five children with no more than twenty-two children in the "K–1 Room," which includes kindergarten and first grade students. During the school year 1994–1995 and in September and early October of 1995, J.H. was located in the K–1 Room.

J.H. suffers from a disability known as Attention Deficit/Hyperactive Disorder ("ADHD"). However, J.H. was not diagnosed as suffering from ADHD until after he had been expelled by defendant from its day care program in October of 1995. Following such diagnosis, the drug Ritalin was prescribed for J.H. From an early age, the behavior of J.H. has made it difficult for him to remain in the same school or in the same day care program. While attending the Wesley Freedom Methodist Church Pre-School Program in 1992 and 1993, it was reported that J.H. engaged in "aggressive and non-compliant behavior ... with lots of biting, hitting and pushing." In 1994, while enrolled in a pre-kindergarten program at the Glenelg Country School, it was reported

that he displayed "aggressive non-compliant behavior." In March of 1994, the head of the Glenelg lower school advised J.H.'s parents "to explore other options" for "next year ... [and] the remainder of this year."

In August of 1994, J.H. was enrolled in the program at St. John's run by defendant ABC Care. Ms. Robin Spampinato is Executive Director of and part owner of defendant ABC Care. In October of 1994, she noted that J.H. exhibited aggressive and immature behavior and that he had poor impulse control. Later that month, Ms. Spampinato met with J.H.'s parents who told her that the child had been evaluated several years earlier for ADHD but that he had not been diagnosed as having this disability. According to Ms. Spampinato, she suggested to J.H.'s parents that he be tested again for ADHD, but David H. and Marsha H. were not at the time receptive to this idea.

J.H. Is behavioral problems continued throughout the 1994–95 school year and worsened commencing in September of 1995, the next school year. Staff of defendant ABC Care maintained daily logs which describe in some detail the continuing misconduct of J.H. The behavior exhibited by him during the 1994–95 school year included biting, pinching, pushing, kicking, spitting and throwing objects at other children. These problems continued during the summer months of 1995 when J.H. attended defendant's summer program on a full time basis. Various techniques were used by the staff in an attempt to control J.H. Is behavior, including so-called "time-outs," isolation from other children and personal, eye-to-eye consultations with him by staff members. However, these approaches were ineffective in controlling the child's behavior.

Rather than improving, the behavior of J.H. became worse in September of 1995 during the beginning of the 1995–96 school year. On September 19, 1995, defendant ABC Care received a letter from a parent whose child had been in the summer program and who stated that J.H. had grabbed her son in the genital area during the summer program. Within a short period of time

---

3. J.H. was born on October 8, 1988.

thereafter, J.H. received three so-called "Incident Reports" for bad behavior, the Reports being dated September 20, September 21 and September 29. Under the policy followed by ABC Care, three such reports within a two-week period required that a conference be held with the parents of the misbehaving child. Such a conference was held on October 5, 1995.

The parties disagree as to precisely what occurred at the conference which was held on October 5, 1995 and which was attended by Ms. Spampinato and J.H.'s parents. According to Ms. Spampinato, she attempted to convince David H. and Marsha H. that the behavioral problems of J.H. should be evaluated by a doctor. According to J.H.'s parents, their son was expelled from the program that day because ABC Care refused to continue to use the same behavioral techniques employed in the past to control the child's behavior. In any event, it is clear that David H. and Marsha H. were advised that J.H. was being expelled from the program. Although Ms. Spampinato gave them three weeks to make other arrangements for the care of J.H., David H. and Marsha H. abruptly decided to remove their son from the program that same day.

On January 29, 1996, David H. addressed a letter to Ms. Spampinato advising her that his son had now been diagnosed as suffering from ADHD and stating that drug therapy had been recommended for J.H. David H. requested that ABC Care now readmit his son to its program. At that time, J.H. had been spending three days a week after school with another St. John's student at his parents' home. Marsha H. advised ABC Care that J.H. needed after school care in its program only for two hours on Tuesdays and Wednesdays of each week. However, defendant ABC Care declined to readmit J.H. to its program stating that there were at the time no spaces open in the K–1 program. Relying on anonymous phone calls to unknown persons at ABC Care, plaintiff contends that space was available in the K–1 room for J.H. According to plaintiff, representatives of defendant lied when they stated

that J.H. could not be readmitted because of a lack of space for him during the months of February and March of 1996.

On February 20, 1996, David H. filed a complaint with the Department of Justice asserting that ABC Care had violated the ADA by not readmitting his son. On April 16, 1996, defendant ABC Care advised the parents of J.H. that there was then an opening in the K–1 program. However, David H. and Marsha H. were told that before J.H. could be re-enrolled, it was necessary that a meeting be held to discuss requirements for J.H.'s readmission. However, when David H. and Marsha H. demanded that their attorney be present, the parties could not agree on the persons who should attend the meeting, and the meeting was never held. Nevertheless, it is apparent that between April of 1996 and October of 1996, ABC Care was willing to readmit J.H. into its program as long as his parents would agree to provide medical information deemed necessary by ABC Care.[4] Final agreement for the child's readmission in October of 1996 was never reached because David H. and Marsha H. were unwilling to accept this condition.

Following correspondence between plaintiff's attorney and Ms. Spampinato, a meeting was finally held on August 28, 1996 to discuss the readmission of J.H. into the program. Various terms and conditions of readmission were discussed between the parties, and there were numerous disagreements. On September 9, 1996, David H. stated in a letter to ABC Care that he did not feel that it was necessary for him to provide ABC Care with detailed, written documentation of the severity of his child's ADHD disability. According to David H., such written information was contained in "confidential medical records," possession of which he claimed was not required by ABC Care to provide day care services. Negotiations between the parties continued throughout September. Finally, on October 2, 1996, Ms. Spampinato prepared a written agreement which met essentially all of the demands made by the parents of J.H. A signed agreement was sent to David H. which he refused to approve.

4. The Department of Justice terminated its investigation of the administrative complaint of David

H. when defendant agreed to readmit J.H. into its K–1 program.

David H. objected to the following sentence in the agreement: "the [H's] agree to share all relevant information which ABC Care, Inc. deems necessary to assist ABC Care, Inc. in the care of [J.H.]." When David H. refused to sign the agreement, Ms. Spampinato wrote to David H. on October 10, 1996 advising that ABC Care would not admit J.H. to its day care program.

On October 16, 1996, this civil action was filed in this Court.[5] In its motion for a preliminary injunction, plaintiff has asked this Court to enter an Order requiring ABC Care to admit J.H. immediately to its after school day care program. In its motion for summary judgment, defendant ABC Care asserts that the facts of record establish as a matter of law that defendant did not violate the ADA in expelling J.H. from its after school care program in October of 1995 and in declining to readmit him in 1996.

## II

### Applicable Principles of Law

The principles to be applied by a court in determining whether a preliminary injunction should issue in a case and whether a defendant is entitled to summary judgment are well established. The standard for granting interlocutory injunctive relief in this Circuit is the "balance of hardship" test first outlined in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977). This test depends upon a "flexible interplay" among four factors to be considered: (1) the likelihood of irreparable harm to plaintiffs if the preliminary injunction is denied; (2) the likelihood of harm to defendant if the requested relief is granted; (3) the likelihood that plaintiffs will succeed on the merits; and (4) the public interest. *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 487 F.Supp. 1248 (D.Md.1980), aff'd, 650 F.2d 495, 499 (4th Cir.1981); *Maryland Undercoating Co. v. Payne*, 603 F.2d 477, 481 (4th Cir.1979). The plaintiff in a particular case has the burden of showing an entitlement to a preliminary injunction. *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036 (4th Cir.1980). The final decision whether to grant or deny a motion for preliminary injunction is one committed to the sound discretion of the trial judge. *First–Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir.1970).

A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the plaintiff will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e), F.R.Civ.P. If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 322, 323, 106 S.Ct. at 2552, 2553.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

---

5. Both David H. and Marsha H. apparently had personal reasons for the bringing of this suit other than the alleged violation of their son's rights under the ADA. David H. complains that he and his wife have been required, because of their son's expulsion from defendant's day care program, to adjust their work schedules to pick him up at school and "travel long distances from our home to find someone who would care for J.H. after school." (Affidavit, ¶ 13).

*Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (4th Cir.1984), quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968). Moreover, only disputed issues of *material* fact determined by reference to the applicable substantive law will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15; *Catrett*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53).

It is not necessary in this case to consider whether plaintiff has satisfied his burden of showing an entitlement to a preliminary injunction. Applying summary judgment standards to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted. Since judgment in this case will be entered in favor of defendant, plaintiff is not entitled to a preliminary injunction.

### III

#### *The ADA*

Title III of the ADA prohibits a place of public accommodation from discriminating against an individual on the basis of disability. 42 U.S.C. § 12182(a). Furthermore, the Act requires that a place of public accommodation like that maintained by defendant ABC Care must make "reasonable modifications in policies, practices or procedures" when such modifications are necessary to afford services being offered to an individual with a disability. 42 U.S.C. § 12182(b)(2)(A)(ii).

For the purpose of the pending motions, defendant concedes that once J.H. was diagnosed as suffering from ADHD, he had a disability as defined by the Act.[6] Defendant does not, however, agree that J.H. had a disability when he was expelled in October of 1995. It is further agreed that defendant ABC Care is a place of "public accommodation." *See* 42 U.S.C. § 12181(7)(K) (including a "day care center" within the definition of "public accommodation").

■ Plaintiff first contends that defendant ABC Care excluded him from its program because of a disability and later failed to make reasonable modifications in its practices and procedures to permit J.H. to be readmitted into defendant's day care program. According to plaintiff, J.H. was expelled in October of 1995 because of a disability. It is further asserted that there were continuing and ongoing violations of the ADA in February and March of 1996 and in October of 1996 when defendant refused to readmit J.H.

On the record here, this Court concludes as a matter of law that defendant ABC Care did not violate the ADA when it expelled J.H. from its program in October of 1995. Evidence of record does not indicate that J.H. then had a disability, as that term is defined in the ADA. Subsequently, in February and March of 1996, when he was concededly disabled within the meaning of the Act, there was no space in the K–1 part of the program for the readmission of J.H. Thereafter, in October of 1996, defendant refused to admit

---

**6.** As discussed hereinafter, plaintiff has not established in this record that J.H. had a disability in October of 1995.

J.H. not because it had failed to make reasonable modifications to its procedures but because the child's parents refused to agree to a reasonable condition for his readmission. During the periods of time at issue in this case, the parents of J.H. were demanding and uncooperative. David H. in particular chose to rely on threats of litigation and accusations of improper conduct on the part of ABC Care in an effort to force defendant to readmit his son to the program. Had David H. spent more time in seeking a reasonable accommodation with defendant and had he acceded to the reasonable conditions required by defendant in October of 1996, J.H. would have been readmitted to the program, and this meritless suit would have been unnecessary.

Before he was expelled in October of 1995, J.H. had consistently been a disruptive and difficult child, who incurred frequent disciplinary infractions. The record here is replete with incidents of misbehavior on the part of J.H., many of which involved the risk of injury to other children. For many months before October of 1995, J.H. had engaged in disruptive and aggressive behavior. On February 7, 1995, he was fighting with other children and not following directions. On April 4, he was extremely defiant, arguing, hitting other children and pushing them. On April 20, he was argumentative and disrespectful, as he was on May 3. On May 5, J.H. and another child walked away from the playground without permission. On May 26, J.H. and another boy showed each other their private parts in the bathroom. When they came back into the K–1 Room, J.H. pretended to "poop" on the other children. The staff then decided that J.H. and the other boy must thereafter be required to go into the bathroom alone. On June 12, J.H. pinched the penis of another child.[7]

There was an escalation of incidents commencing in September of 1995. On September 5, J.H. received an Incident Report for being defiant and screaming at and arguing with a staff member. On September 12, J.H. said to several little girls, "show me your pink panties." The girls complied, and during the day, J.H. kept pulling at his penis. On his way outside that day, J.H. started fighting and hit another child in the head with the door. On September 13, J.H. was not allowed to play with blocks because he was throwing beads at other children. He received an Incident Report that day for pretending to pee on other children. On September 14, J.H. pretended to "poop" on another child. When he later pulled on another child's arm that day, he received an Incident Report. On September 19, J.H. threw beads across the room and hit another child in the eye. On September 20, J.H. and other children hit each other with drama items and cushions. He received an Incident Report. On September 21, he smacked another child on the bottom. Although initially denying that this had occurred, he finally admitted that he had lied. During clean-up time, J.H. threw beads at other children hitting them in the face. Another Incident Report was issued. On September 29, J.H. was disciplined for spitting in the gym. During an art project, he threw crayons in the faces of some of the children and later had an altercation with another child. An Incident Report was issued, and, since there had been three such Reports in a two week period, the parents were directed to call and arrange a conference with the Executive Director. That conference was held on October 5, 1995.

In view of this lengthy record of disruptive and aggressive behavior on the part of J.H., defendant ABC Care was fully justified in expelling him in October of 1995. J.H. was expelled in October of 1995 not because of a known disability, but because of his continuing misbehavior. The child's removal from the program was completely consistent with the stated Discipline Plan of ABC Care. Because his parents had failed to obtain an updated medical opinion concerning his condition, J.H. had not at the time been diagnosed as suffering from ADHD. According to defendant, although it had been suggested to them both in October of 1994 and again a year later in October of 1995 that their child

7. Between November 10, 1994 and May 21, 1995, ten Incident Reports were issued to the parents of J.H. for these and other occurrences. Two more such Reports were issued in June of 1995 during the summer program.

be definitively evaluated to determine if he suffered from ADHD, the parents of J.H. did not comply with this request until after their son had been expelled. Although denying that Ms. Spampinato ever requested that they have J.H. re-evaluated to determine if he was suffering from ADHD, David H. and Marsha H. do concede that no such diagnosis had been made before October 5, 1995 and that shortly thereafter J.H. was in fact re-evaluated and definitively diagnosed as suffering from this condition. Once the diagnosis was made, the drug Ritalin was prescribed for the child. Had the diagnosis been made at an earlier date and appropriate medication prescribed, J.H. might very well have discontinued his disruptive behavior and been able to remain in the program.[8]

Counsel for plaintiff argue that defendant should have made modifications of its procedures in September and October of 1995 and that such modifications would have permitted J.H. to remain in the K–1 program. This Court would disagree. Even if the Court were to assume that in October of 1995, J.H. suffered from a "disability" as defined by the ADA, plaintiff has submitted no evidence by way of an expert opinion or otherwise concerning the type of modifications of defendant's procedures which would have permitted J.H. to remain in the program. Rather, plaintiff merely argues that defendant ABC Care should have continued the unsuccessful procedures which had previously been pursued in attempting to control J.H.'s behavior, including so-called "time-outs," isolation from other children, close facial contact and personal talks with the child when he misbehaved. But clearly, these procedures had consistently been followed and had utterly failed to control the child's behavior. Indeed, if anything, defendant ABC Care was overly patient in continuing with its attempts to deal with this disruptive child. The behavior of J.H. did indeed present a significant risk of harm to other children. Not only did he engage in aggressive physical contact with other children but also much of J.H.'s aggressive behavior had disturbing sexual overtones. Defendant ABC Care had an obligation to other parents to insure that their children not be subjected to possible harm inflicted by J.H.

Counsel for plaintiff further contend that in February of 1996, defendant ABC Care refused to admit J.H. because of his disability. At the meeting held on October 5, 1995, Ms. Spampinato had advised the parents of J.H. that their son's removal from the program was not permanent and that, when his behavior improved, he would be considered for readmission. On January 29, 1996, David H. addressed a letter to Ms. Spampinato advising that J.H. had now been diagnosed as having ADHD and that his physicians had recommended drug therapy. He requested that defendant ABC Care readmit J.H. to its program, starting in February of 1996. However, defendant could not admit the child at that time because there were no spaces open in the K–1 program. It is argued by plaintiff that this was a lie. On the record here, this Court cannot agree.

Evidence produced by defendant establishes as a matter of law that there were no openings for J.H. in defendant's K–1 program during the months of February and March of 1996. At that time, the parents of J.H. were seeking admission of the child to defendant's program on "a part-time provisional basis," for only two hours on Tuesdays and Wednesdays.[9] In support of the contention that defendant misrepresented material facts, plaintiff relies on affidavits of various persons who placed anonymous calls to unknown representatives of defendant and who were told that there were "openings" in the program. If, as here, evidence is merely colorable and not significantly probative of the fact at issue, summary judgment may be granted. See Anderson, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The evidence relied upon by plaintiff in support of the contention that there were in fact openings for J.H. in the K–1 program in February and March of 1996 is not of sufficient caliber and quantity

---

8. According to David H. and Marsha H., Ritalin has been successful in reducing the behavior problems suffered by J.H. in the past.

9. In her letter of February 8, 1996, Marsha H. stated: "Now that we know more about [J.H.'s] medical condition (that he has a form of ADHD), we have been more prepared to deal with it."

to present a dispute of material fact. *Id.* at 254, 106 S.Ct. at 2513. None of the calls were placed to Ms. Spampinato. Indeed, the persons who purportedly made the statements relied upon have not been identified in the record here. Moreover, no inquiry was made as to the day or days when the supposed "openings" existed. By way of contrast, conclusive evidence produced by defendant indicates that there were at the time no openings in the afternoon K–1 program except for Friday, and, as noted, J.H.'s parents were not then asking that he be admitted on a Friday.

By letter of April 22, 1996 addressed to plaintiff's attorneys, Ms. Spampinato offered to immediately reserve a space for J.H. in the K–1 program. David H. declined to accept this offer because of a "staffing problem." He demanded replacement of a member of the staff whom he perceived to be "openly hostile" toward his son. When defendant declined to replace the staff person, the parents of J.H. chose not to enroll him in the program in April of 1996.

▮ Finally, plaintiff argues that defendant ABC Care violated the ADA when J.H. was not admitted to the program in October of 1996. This claim must likewise fail.

Although represented by counsel at the time, David H. chose to direct a barrage of angry and accusatory letters to Ms. Spampinato in August and September of 1996, repeatedly demanding an "apology" from her and even the payment by her of his attorneys' fees. He accused her of making false statements, of stonewalling and of illegal discrimination. The tone of these letters was increasingly vituperative and continually threatened suit. He stated that he was "disgusted by your remarks," that Ms. Spampinato was "disrespectful" and "rude" and that she had chosen to "meander and stall" instead of responding to his demands. Re-

peatedly, he insisted that defendant ABC Care change its day care procedures and even replace a staff member. He stated that upon readmission of his son, he would "also expect that age appropriate behaviors such as general horseplay between boys (and girls for that matter) will not be hysterically magnified into some sort of crisis behavior." Although berating Ms. Spampinato for what he termed her "vacillating demands," David H. himself insisted that lengthy and detailed paragraphs be included in the agreement being negotiated between the parties for the readmission of his son.

After weeks of negotiations, defendant ABC Care was prepared to admit J.H. provided that his parents "agreed to share all relevant information which ABC Care, Inc. deems necessary to assist ABC Care, Inc. in the care of [the child]." David H. and Marsha H. unjustifiably refused to accept this condition.[10] Certainly, a day care center which has a disabled child in its care has the right at all times to be informed of medical and other information in the possession of the parents deemed necessary by the center to assist it in dealing with the child's special needs. The obdurate stance taken by David H. and Marsha H. in October of 1996 is another example of the uncooperative spirit displayed by them throughout their dealings with defendant. It was therefore the actions of J.H.'s parents themselves which resulted in the failure of defendant to readmit the child to its program in the early Fall of 1996.[11] Accordingly, plaintiff's claim that defendant violated the ADA in October of 1996 must also fail.

Plaintiff argues that J.H. at all relevant times had a disability and that defendant has not met its burden of proving that the child presented a "direct threat" to the health and safety of others. *See* 42 U.S.c. § 12182(b)(3).[12] This contention fails to distinguish between the status of J.H. in Octo-

---

**10.** Although Marsha H. had earlier offered to comply with all of defendant's requirements, she and her husband later refused to accept this condition for readmission.

**11.** In his letter of September 9, 1996, David H. admitted that it had been "our fault" that no admission agreement had been reached between the parties by that date.

**12.** In filing after the hearing a Supplemental Memorandum advancing this argument together with two exhibits, counsel for plaintiff have violated Local Rule 105.2.a. As clearly stated in that Rule, surreply memoranda may not be filed unless otherwise ordered by the court. Such a filing is particularly inappropriate *after* a hearing has been held on the motion then pending before the court. *See* Local Rule 105.2.b.

ber of 1995 when he was expelled and his status thereafter when he was seeking readmission to the program. As discussed herein, J.H. was not expelled in October of 1995 because he then had a disability as defined in the ADA. Inasmuch as his parents had not had a definitive diagnosis made of his condition, it was not known that J.H. was suffering from ADHD in October of 1995. Plaintiff would have the Court conclude that, because of a history of aggressive and disruptive behavior, a misbehaving child like J.H. was, during the relevant times, suffering from a disability defined by the Act. But prior to October 5, 1995, J.H. had not been diagnosed as having ADHD or any other disabling medical or psychological condition. Certainly, evidence of record does not indicate that J.H. then had a physical or mental impairment which "substantially" limited one of his "major life activities." *See* § 12102(2)(A). At the time, he had an apparently normal home life and was doing well in his school work at St. John's. The fact that a six year old child because of his disruptive behavior may have been denied the right to play with and interact with other children several hours each day after school is hardly the type of "major life activity" which Congress had in mind when it defined the term "disability" in § 12102(2)(A)

Defendant has conceded for the purpose of these motion proceedings that, after J.H. was diagnosed with ADHD, he was a disabled individual under the ADA. But such disability played no part in defendant's refusal to readmit J.H. in February and March of 1996 and again in September and October of 1996. As discussed herein, there was no space available in the K–1 program in February and March. In September and October, ABC Care was prepared to readmit J.H. but his parents refused to agree to a reasonable condition required by defendant for such readmission.

For all these reasons, the motion for summary judgment of defendant ABC Care must be granted as to Count I of the complaint.

## IV

### *Plaintiff's State Law Claims*

 The pendent claims asserted by plaintiff in this case under state law must be dismissed. Pendent jurisdiction is a doctrine of discretion and not one of a plaintiff's right. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, the Supreme Court has expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. The principles of *Gibbs* have been codified under the name "supplemental jurisdiction." 28 U.S.C. § 1367. A court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed. *See* 28 U.S.C. § 1367(c)(3). In this particular case, defendant's motion for summary judgment has been granted as to the one federal claim asserted by plaintiff against it.

A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See Hector v. Weglein,* 558 F.Supp. 194, 204–05 (D.Md.1982). Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974) said the following:

> If it appears that the federal claims ... could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

*Id.* at 1180.

Since defendant's motion for summary judgment is being granted as to the one federal claim asserted by plaintiff in this case and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction over the claims asserted

by plaintiff under state law in Counts II and III of the complaint. Those claims will therefore be dismissed without prejudice.

## V

### *Conclusion*

For all the reasons stated, plaintiff's motion for a preliminary injunction will be denied, and defendant's motion for summary judgment will be granted. An appropriate Order will be entered by the Court.