REED ELSEVIER, INC.,
et al., Plaintiffs,

v.

THELAW.NET CORPORATION,
Defendant.

Case No. C–3–01–116.

United States District Court,
S.D. Ohio,
Western Division.

March 18, 2002.

---

Charles Faruki, Dayton, OH, J. Paul Williamson, Washington, DC, Thomas Kraemer, Dayton, OH, Trina Longo, Washington, DC, for Plaintiffs.

John Haviland, Dayton, OH, Louis Svendsen, Chicago, IL, for Defendant.

## DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANT'S COUNSEL (DOC. # 36)[1]

RICE, Chief Judge.

The Plaintiffs herein have set forth ten claims for relief against the Defendant in their Amended Complaint (Doc. # 17), to wit: trademark infringement under §§ 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) (First Claim for Relief); false advertising and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Second Claim for Relief); trademark dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Third Claim for Relief); trademark infringement under § 1329.65 of the Ohio Revised Code (Fourth Claim for Relief); deceptive trade practices under § 4165.02 of the Ohio Revised Code (Fifth Claim for Relief); common law trademark and tradename infringement (Sixth Claim for Relief); common law unfair competition (Seventh Claim for Relief); common law trademark dilution (Eighth Claim for Relief); tortious interference with business relationships (Ninth Claim for Relief); and breach of contract (Tenth Claim for Relief).

This case is now before the Court on the Plaintiffs' Motion to Disqualify Defendant's Counsel (Doc. # 36). The Plaintiffs have moved to disqualify Defendant's counsel, Louis P. Svendsen ("Svendsen"), arguing that he will be called as a witness in this litigation. The Plaintiffs move in accordance with DR 5–102(A), which provides:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

---

1. This Decision has been edited for publication by the Court.

DR 5–101(B), which is referred to in DR 5–102(A), provides:

(B) A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

Courts have held that, when one lawyer is disqualified under DR 5–102(A), because he will testify as a witness, his entire law firm and all other lawyers in it must also be disqualified. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530, 538 (3rd Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Estate of Andrews v. United States*, 804 F.Supp. 820, 830 (E.D.Va.1992); *Mason & Dixon Lines, Inc. v. Glover*, 1989 WL 135219 (N.D.Ill.1989), *affirmed*, 975 F.2d 1298 (7th Cir.1992). Therefore, if Svendsen is disqualified by that Disciplinary Rule, because he will be a witness, then all other attorneys associated with his law firm, Worker & Power, must be disqualified, as well.

■ In *Hamrick v. Union Township*, 81 F.Supp.2d 876, 879 (S.D.Ohio 2000), the court set forth certain standards which are applicable to all requests that an attorney be disqualified:

A motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or the breach of an ethical duty to the court's attention. *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir.1980). Confronted with such a motion, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice. *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 257 (S.D.Ohio 1991). In order to resolve these competing interests, the courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir.1982).

The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Kitchen*, 769 F.Supp. at 256 (quoting *Ex Parte Burr*, 22 U.S. 529, 531, 9 Wheat. 529, 6 L.Ed. 152 (1824)). However, "the ability to deny one's opponent the services of his chosen counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir.1988). Motions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir.1982).

*Id.* at 878. In *International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2nd Cir.

1975), the Second Circuit explained the rationale behind Rules 5–101(B):[2]

> The ultimate justification for the disqualification rule, in [Professor] Wigmore's view, was that the public might think that the lawyer is distorting the truth for the sake of his client. Another argument for disqualification is that the lawyer-witness will vouch for his own credibility in summing up to the jury—a powerful means of support for his own credibility. The argument that such tactic is to the detriment of his client obviously defeats itself. But the argument that it is. unfair to the opponent has some merit. It is difficult, indeed, to cross-examine a witness who is also an adversary counsel concerning matters of fact, and, more particularly, on matters impeaching his credibility, within the bounds of propriety and courtesy owed to professional colleagues.

*Id.* at 1294. *See also, S & R, Inc. v. Unlimited Financing, Inc.,* 625 F.Supp. 1033, 1036–37 (S.D.Ohio 1985).

As is indicated, the Plaintiffs move to disqualify Svendsen, arguing that he will be called as a witness in this litigation. The Plaintiffs base their contention on the fact that the Defendant has supported its Motion for Partial Summary Judgment with Svendsen's affidavit. The Defendant counters by arguing that Svendsen will not be called to testify as a witness during the trial of this litigation. *See* Doc. # 38. The Court begins its analysis by reviewing Svendsen's affidavit and his possible testimony at trial.

As indicated, the Defendant has supported its Motion for Partial Summary Judgment (Doc. # 22) with Svendsen's affidavit. With that motion, the Defendant seeks summary judgment on the Plaintiffs'

Tenth Claim for Relief, a claim in which the Plaintiffs allege that the parties have entered into a contract, to wit: a licensing agreement, whereby Plaintiffs permitted Defendant to use their Martindale–Hubbell database for research and reference purposes. Doc. # 17 at ¶¶ 128–29. Plaintiffs allege further that the Defendant has violated the terms of that licensing agreement, by using that database to send unsolicited, "spam" e-mails to Plaintiffs' customers and prospective customers. *Id.* at ¶ 129. In his affidavit, Svendsen states that, in June or July, 2000, he responded to a solicitation from the Plaintiffs to purchase a CD containing the Martindale–Hubbell database, which lists many attorneys throughout the United States. He called the telephone number which had been provided and spoke with a sales representative for Martindale–Hubbell. According to Svendsen, the sales representative indicated that many firms were using that database to sell products to attorneys. At the request of Svendsen, the sales representative sent him a copy of the licensing agreement under which the Martindale–Hubbell database would be sold. A copy of that document is attached to and authenticated by Svendsen's affidavit.

Based upon his affidavit, the Court concludes that Svendsen could provide two types of testimony at trial. He could authenticate the licensing agreement, and he could testify regarding his conversations with the Martindale–Hubbell sales representative. It does not appear that Svendsen will be a necessary witness to authenticate the licensing agreement, given that such agreement could easily be authenticated through the testimony of a representative of the Plaintiffs or through a stipulation by the parties. In addition, the

---

**2.** DR 5–101(B) and DR 5–102(A) are related, given that both rules address the question of when a testifying attorney must be disqualified. *See Skeen v. Chase Manhattan Bank,* 768 F.2d 1194 (10th Cir.1985). Consequently, the underlying rationale for DR 5–101(B) also supports DR 5–102(A).

Plaintiffs have not contested the authenticity of the licensing agreement attached to Svendsen's affidavit. However, Svendsen's conversation with the sales representative is a different matter. The Defendant has not identified the individual with whom Svendsen spoke. If that person could be found, it is unlikely that he or she would remember his or her conversation with one particular customer which occurred nearly two years ago. Consequently, the jury can hear about that conversation only from Svendsen's testimony. The importance of such testimony to the Defendant is questionable. The Defendant has indicated that it does not intend to call Svendsen as a witness.

■ Nevertheless, the Defendant argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim, because the language of the licensing agreement indicates that its actions do not violate that agreement. The Defendant has relied upon the conversation between Svendsen and the sales representative to buttress its interpretation of the license. The Plaintiffs argue that regardless of whether the Defendant will call Svendsen as a witness, he made himself an essential witness and, thus, must be disqualified, as a result of submitting an affidavit to support his client's Motion for Partial Summary Judgment. In *Citrus Marketing Bd. v. M/V Ecuadorian Reefer*, 754 F.Supp. 229, 230 (D.Mass.1990), a case relied upon by Plaintiffs, the court held that, if it were to consider the factual assertions in an attorney's affidavit to resolve contested factual matters, it would be required to disqualify counsel under DR 5–102(A). Therein, in order to avoid disqualifying him,[3] the Court did not consider the factual assertions in counsel's affidavit. This Court finds the reasoning of *Citrus Marketing* to be persuasive and will follow that decision. Below, this Court overrules the Defendant's Motion for Partial Summary Judgment (Doc. # 22), because it is supported by Svendsen's affidavit. If the Court were to consider Svendsen's statements concerning his conversation with the sales representative, it would be required to disqualify him. The Plaintiffs have not stipulated that this conversation occurred in the manner indicated by Svendsen. Therefore, the Court would be resolving a contested factual matter, if it were to consider his statements about that conversation. The Court deems it appropriate to afford Defendant the opportunity to renew that motion, without relying upon the affidavit of its counsel to resolve contested factual matters and, thus, to avoid disqualifying Svendsen.

■ Accordingly, the Court overrules the Plaintiffs' Motion to Disqualify Defendant's Counsel (Doc. # 36).[4]

---

**3.** The *Citrus Marketing* court did consider documents attached to and authenticated by counsel's affidavit, because there was no question about their authenticity.

**4.** The Defendant argues that DR 5–101(B)(4) prevents it from disqualifying Svendsen, because such action would cause it suffer a substantial hardship. According to Defendant, that hardship flows largely from the fact that the added expense of securing new counsel could be potentially crippling to the Defendant. That would not be a sufficient reason to permit Svendsen to remain as counsel for the Defendant, while testifying about his conversation with the sales representative. In *General Mill,* the Sixth Circuit rejected the argument that disqualifying plaintiff's counsel would work a substantial hardship, because it did not have the resources to employ substitute counsel. 697 F.2d at 708.